IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. ROBINSON,<br><br>    Plaintiff,<br><br>  v.<br><br>ROGELIO DELGADO, et al.,<br><br>    Defendants.<br>_____/ | No. C 02-1538 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT |

    Defendants Rogelio Delgado, M.S. Evans, Anthony Lamarque, P. Olivarria and James Tilton have filed a motion to dismiss and for summary judgment.  Plaintiff Anthony L. Robinson, an inmate incarcerated at Salinas Valley State Prison (SVSP), opposes the motion.  The motion was taken under submission on the papers. Having considered the parties' papers, the Court GRANTS Defendants' motion in part and denies it in part.

BACKGROUND

    As set out more fully in the Court's earlier orders, on March 29, 1991, Plaintiff was sentenced to twenty-three years to life following his conviction of one count of second degree murder with a firearm, with enhancements for being a habitual criminal.

In December, 1995, during his incarceration, Plaintiff became a member of the House of Yahweh Yadhaim (HOYY).  During Plaintiff's incarceration, he has filed numerous 602 appeals regarding his First Amendment right to free exercise of his religion.

On March 25, 2001, a physical altercation occurred between Plaintiff and Defendants Olivarria and Delgado when they were escorting him to and from the visitor center.

On March 29, 2002, Plaintiff filed a pro se civil rights complaint alleging eleven causes of action against ninety-two Defendants.[1]  Of those claims, two remain: (1) an Eighth Amendment claim against Defendants Olivarria and Delgado for the use of excessive force on March 25, 2001, and (2) a First Amendment claim against Defendants Tilton, Evans and Lamarque for denial of the right to the free exercise of religion based upon Defendants' failure to provide him with a kosher diet or to allow him access to the chapel or group worship.[2]

In September, 2006, the Court entered an order on Defendants' first motion for summary judgment.  Among other things, the Court denied the motion with respect to Plaintiff's excessive force claim stemming from the March 25, 2001 incident and granted summary judgment on Plaintiff's First Amendment free exercise claim.  In

---

[1] For a detailed account of the procedural history of this case, see the Court's April 8, 2008 order granting Plaintiff's motion to file a third amended complaint (Docket No. 143).

[2] As discussed below, Plaintiff also alleges against Defendants Tilton, Evans and Lamarque a Fourteenth Amendment Equal Protection claim and a claim pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc. These claims are also based upon Defendants' failure to provide a kosher diet or access to the chapel or group worship.

September, 2007, the Court appointed counsel to represent Plaintiff. Two months later, Plaintiff's counsel filed a motion for leave to file a third amended complaint (TAC). Counsel identified an intervening change in law and presented new facts in support of Plaintiff's First Amendment right to a kosher diet and access to the chapel or group worship. In addition, counsel sought leave to add claims under the Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, also based on Defendants' failure to provide Plaintiff with a kosher diet or to allow him access to the chapel or group worship. The Court granted the motion and Plaintiff filed his TAC.

DISCUSSION

I.   Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.

3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible

4

discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

A.   Excessive Force Claim

The Court has already denied Defendants Olivarria and Delgado's motion for summary judgment with respect to Plaintiff's excessive force claim. Although Defendants have produced additional evidence in support of their motion, Plaintiff's deposition testimony establishes that there are triable questions of fact with respect to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Despite Defendants' assertion that the undisputed facts support a grant of summary judgment in this case, the parties' accounts of what happened on March 25 differ greatly. The Court notes that Defendants' characterization of its version of the facts as "undisputed" and their blanket dismissal of Plaintiff's version

5

of the facts contained in his deposition testimony as "self-serving" is not helpful to the resolution of this motion. As Defendants are well aware, in deciding this motion, the Court views all evidence in the light most favorable to Plaintiff.

Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claim.[3]

B.   Kosher Diet Claims

As discussed in the Court's earlier orders, Plaintiff claims that prison officials denied his First Amendment right to free exercise of religion and his right Fourteenth Amendment right to Equal Protection, as well as his RLUIPA rights, by refusing to grant his request for a kosher diet. The Court earlier granted Defendants' motion for summary judgment with respect to Plaintiff's First Amendment claim, but allowed Plaintiff to replead that claim based on an intervening change in law.

1.   First Amendment Free Exercise of Religion Claim

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by preventing him from engaging in activities he sincerely believes are mandated by his faith, without any justification reasonably related to legitimate penological interests. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997); Shakur v. Schriro, 514 F.3d 878, 885 (9th Cir. 2008). To reach the level of a constitutional violation, "the interference with one's practice of

---

[3] Defendants also argue that Evans, Lamarque and Tilton are entitled to summary judgment on this claim. However, as Plaintiff points out, the Eighth Amendment claim is brought only against Delgado and Olivarria.

6

religion 'must be more than an inconvenience; the burden must be substantial and an interference'" with the prisoner's sincerely held religious beliefs. Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

In Shakur, the Ninth Circuit established that, as a threshold matter, a prisoner is not required to show objectively that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. Rather, the test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. Id. (finding district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The mandates of a religion are not merely what is minimally required of adherents of a religion but include what "the individual human being perceives to be the requirement of the transhuman Spirit to whom he or she gives allegiance." Peterson v. Minidoka County School Dist., 118 F.3d 1351, 1357 (9th Cir. 1997).[4]

---

[4] See, e.g., Shakur, 514 F.3d at 885 (given plaintiff's sincere belief that he is personally required to consume kosher meat to maintain his spirituality, the prison's refusal to provide a kosher meat diet implicates the Free Exercise Clause); McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (prison authorities may deny special religious diet if inmate is not sincere in his religious beliefs); McCabe v. Arave, 827 F.2d 634, 637 n.2 (9th Cir. 1987) (district court assumed without deciding that prisoner's beliefs were sincerely held and that the Church Jesus Christ Christian qualified as a religion); see also Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981) (finding father's views regarding social security numbers as the "mark of the beast" religious within the meaning of the First Amendment and sincerely held); Luckette v. Lewis, 883 F. Supp. 471, 478 (D. Ariz. 1995) (courts must be able

7

A restriction on an inmate's First Amendment religious rights is valid if it is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The burden is on the prison officials to prove that the restriction of the prisoner's exercise of religion was reasonably related to a legitimate penological objective. See Ashelman v. Wawrzaszek, 111 F.3d 674, 677-78 (9th Cir. 1997). A prisoner's right to free exercise of his religion "'may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.'" See Ward v. Walsh, 1 F.3d 873, 876 (9th Cir. 1993) (quoting O'Lone, 482 U.S. at 348). Under the Turner analysis, a court must consider four factors when determining if a restriction that infringes on a prisoner's rights is reasonably related to legitimate penological interests: (1) the restriction must have a logical connection to legitimate governmental interests; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner, 482

---

to distinguish legitimate religions from so-called religions which tend to mock established institutions and are obviously shams and absurdities whose members are patently devoid of religious sincerity); cf. Keenan v. Hall, 83 F.3d 1083, 1092-93 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (prisoner lacks standing to challenge denial of access to Native American spiritual leader where prisoner never claimed adherence to Native American religion or requested religious guidance from spiritual leader).

8

U.S. at 89-90 (internal quotation marks and citations omitted).

A prisoner, such as Plaintiff, who adheres to a minority religion must be afforded a "reasonable opportunity" to exercise his religious freedom. See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972). This does not mean, however, that every religious sect or group within a prison must have identical facilities or personnel. See id.

Plaintiff alleges that Defendants denied him a kosher diet that conforms to the tenets of the HOYY, in violation of his First Amendment right to free exercise of religion. Prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 of denial of the right to exercise religious practices and beliefs. See Ward, 1 F.3d at 877 (Jewish prisoner claiming denial of kosher diet), cert. denied, 510 U.S. 1192 (1994); McElyea, 833 F.2d at 198 (same); Moorish Science Temple, Inc. v. Smith, 693 F.2d 987, 990 (2d Cir. 1982) (Muslim prisoner claiming denial of proper religious diet).

Defendants state that they do not dispute that Plaintiff has a sincerely held belief that he is required to consume a kosher diet. Rather, Defendants argue that the vegetarian diet Plaintiff currently receives is kosher and, therefore, refusing to allow him to participate in the kosher meal program is not a burden on his religious practices. However, Plaintiff testified that he believes

9

that at least some of the dairy products and processed foods served as part of the vegetarian meals are not kosher. Defendants argue that they have produced uncontested evidence that the vegetarian meals are kosher. However, the declaration upon which Defendants rely states only that the "vegetarian religious diet satisfies the Orthodox Jewish requirements to abstain from eating non-kosher meats." Book Decl. at ¶ 6.[5] This evidence does not address Plaintiff's belief that all of the foods he eats, not only meat, must be kosher.

Defendants go on to argue that, even if their refusal to serve Plaintiff a kosher diet is a burden on his religious practices, such a burden is permissible based on the four Turner factors. First, Defendants argue that "budgetary concerns preclude opening up the Jewish Kosher Meal Program to non-Jewish inmates like Plaintiff." Motion at 18. Defendants contend, "Removing the requirement of being a kosher-observant Jew from the Jewish Kosher Meal Program could have the effect of requiring the Department to provide kosher meals to over 170,000 inmates at a cost to state taxpayers of well over $400,000,000.00 per year." Id. However, Plaintiff has presented evidence that only twenty HOYY members are housed at SVSP. Although Defendants do not provide a basis for the 170,000 figure, it appears that they contend that they will have to

---

[5] Defendants also rely upon the declaration of Robert Conway, the food manager at SVSP, who states, "Vegetables and vegetarian dishes are not cooked in oil." Conway Decl. ¶ 4. This appears to be in response to Plaintiff's concern that certain oils are not permitted in kosher diets. While it may be that none of the vegetables served at SVSP is prepared using oil, it is difficult to believe that none of the vegetarian dishes contains any oil or that the vegetarian meals are entirely oil-free.

10

provide kosher meals to every inmate who requests them if they do so for Plaintiff. However, this assertion disregards Plaintiff's evidence of a sincerely held religious belief that he must eat the kosher diet. Defendants do not argue that every prisoner in the California prison system would or could assert such a belief.

Defendants also argue that they have a legitimate interest in simplifying the food services provided. However, unlike the situation in the cases cited by Defendants, the kosher meal program already exists. As the Ninth Circuit held in Shakur, "the marginal cost and administrative burden of adding [Robinson] to the roster of kosher-diet inmates would be small or even negligible." 514 F.3d at 886. In contrast, Defendants rely upon cases in which plaintiffs demanded the creation of new kosher or halal meal programs. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1992); Williams v. Morton, 343 F.3d 212, 217 (3d. Cir. 2003). The Court finds that Defendants have not identified any legitimate penological interests that weigh heavily in favor of granting summary judgment.

Defendants next argue that the vegetarian diet Plaintiff receives is an alternative means by which Plaintiff can follow the dietary restraints of his religion. Defendants argue that the HOYY itself states that members may "choose either kosher or vegetarian diets as available at each facility." Mossler Decl., Ex. H (letter from HOYY representative to Plaintiff's counsel describing religious diet). However, as discussed above, there is a factual dispute whether the vegetarian meals actually comply with Plaintiff's belief that his religion requires all of the foods he

11

consumes to be kosher, not only the meat.

Defendants argue that the third <u>Turner</u> factor, the impact of the accommodation on guards, other inmates and prison resources, also weighs in favor of summary judgment. However, this argument is based on Defendants' unavailing argument that providing Plaintiff with kosher meals is equivalent to opening the kosher meal program to any inmate who wants to participate. Defendants also argue that allowing Plaintiff to receive kosher meals "could engender jealousy and resentment among inmates of other faiths who do not receive the same treatment." Motion at 19. This argument is not consistent with Defendants' assertion that, if they allow Plaintiff to participate in the kosher meal program, they will have to allow any inmate to participate. Moreover, the Ninth Circuit has "discounted the favoritism argument, since this effect is present in every case that requires special accommodations for adherents to particular religious practices." <u>Shakur</u>, 514 F.3d at 886 (internal quotation marks omitted).

Finally, Defendants argue that the vegetarian diet Plaintiff is already receiving is a "ready alternative" to the kosher diet he requests. As discussed above, there are triable questions of fact with respect to whether the vegetarian diet actually satisfies the requirements of Plaintiff's religion as he understands them.

The Court denies Defendants' motion for summary judgment on Plaintiff's First Amendment free exercise claim related to his request for kosher meals.

    2.   RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act

12

(RLUIPA) provides,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The statute applies to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).

Congress intended to distinguish RLUIPA from traditional First Amendment jurisprudence in at least two ways. First, it expanded the reach of the protection to include "any 'religious exercise,' including 'any exercise of religion, whether or not compelled by or central to, a system of religious belief.'" Greene v. Solano County Jail, 513 F.3d 982, 986 (9th Cir. 2008) (quoting Cutter v. Wilkinson, 544 U.S. 709, 714 (2005) and 42 U.S.C. §2000cc-5(7)(A)). RLUIPA "bars any inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Greene, at 986. Second, as opposed to the deferential rational basis standard of Turner v. Safely, 482 U.S. 78, 89-90 (1987), RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is "'in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.'" Greene, at 986 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).

Defendants argue that they are entitled to summary judgment on

13

Plaintiff's RLUIPA claim because he receives vegetarian meals.  As discussed above, Defendants assert that the vegetarian meals comply with the HOYY's requirements and, therefore, Plaintiff cannot establish that his religious practices have been substantially burdened.  In the alternative, Defendants argue that, if Plaintiff has met his burden, providing him with vegetarian meals is the least restrictive means of meeting Plaintiff's needs while protecting the government's compelling interest in preserving public resources and maintaining prison security.  However, as discussed above, genuine issues of material fact remain with respect to both of these arguments.  Therefore the Court denies Defendants' motion for summary judgment on Plaintiff's RLUIPA claim based on his request for kosher meals.

        3.    Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," Cruz v. Beto, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). See Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987); see, e.g., Shakur, 514 F.3d at 891-892 (finding district court erroneously applied rational basis review to plaintiff's claim that defendants violated the equal protection clause by providing only Jewish

14

inmates with kosher meat diet and remanding claim so that record could be more fully developed regarding defendants' asserted penological interests).

Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every religious benefit it provides so that adherents of all religions are treated exactly the same. As the Supreme Court explained in Cruz:

> We do not suggest . . . that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

405 U.S. at 322 n.2. Application of the Cruz standard does not require "strict numerical analysis" or "create a system of ratios or quotas." Thompson v. Commonwealth of Ky., 712 F.2d 1078, 1081 (6th Cir. 1983) (upholding grant of summary judgment on Muslim inmates' request for access to chapel comparable to Christian inmates); see also Butler-Bey v. Frey, 811 F.2d 449, 453 (8th Cir. 1987). It does require that the prison make a good faith accommodation in light of practical considerations. See Freeman, 125 F.3d at 737; Thompson, 712 F.2d at 1082 (court should scrutinize the prison officials' conduct to determine whether they deliberately discriminated against the minority religion or abused their discretion in distributing the prison's limited resources).

Defendants argue that they are entitled to summary judgment on Plaintiff's Equal Protection claim because Plaintiff is not

15

similarly situated to the Jewish prisoners who receive kosher meals. Defendants make this distinction based on their assertion that "[u]nder Jewish law, a person may choose to be a vegetarian, but the state cannot force him to be a vegetarian." Motion at 21. In contrast, Defendants assert that the HOYY expressly permits members to eat either a kosher or vegetarian diet. However, the inquiry is not whether the two religions require the same diet. As stated in Shakur, the inquiry is whether "the difference between the defendants' treatment of him and their treatment of Jewish inmates is reasonably related to legitimate penological interests." 514 F.3d at 891 (rejecting district court's grant of summary judgment for defendants on Equal Protection claim based in part on district court's reliance on "the fact that Kosher meat is not Halal meat and Muslims are to avoid non-Halal meat").

Defendants' motion for summary judgment on Plaintiff's Equal Protection claim related to his request for kosher meals is denied.

    4. Injunctive Relief Against Defendants Tilton and Lamarque

Defendants next argue that Plaintiff is not entitled to injunctive relief against Defendants Tilton, the former secretary of CDCR, and Lamarque, the former warden of SVSP, because they are both retired. Plaintiff argues that, because Tilton and LaMarque are named in their official capacity, their successors should be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d). However, Plaintiff has sued Tilton and Lamarque in both their individual and official capacities. See TAC ¶ 6, 7.

16

To the extent Plaintiff has sued Tilton and Lamarque in their individual capacities, the Court grants their motion for summary judgment on all claims against them. To the extent Plaintiff has sued Tilton in his official capacity, the Court substitutes his successor, Matthew Cate. The Court need not substitute Lamarque's successor, M.S. Evans, because he is already named as a defendant.

### C.   Request to Use the Chapel

Plaintiff also claims that prison officials denied his First Amendment right to free exercise of religion and his Fourteenth Amendment right to Equal Protection, as well as his RLUIPA rights, when they would not allow him to use the chapel for HOYY services.

Defendants argue that these claims are moot because, beginning in January, 2008, Plaintiff and other HOYY inmates have been allowed to meet in the chapel for two hours every Thursday.[6] However, the TAC makes clear that Plaintiff seeks access to the chapel on the HOYY sabbath, which is Saturday, not Thursday. Moreover, "[i]t is well established that the mere voluntary cessation of alleged unlawful activity does not render those allegations moot." Gluth v. Kangas, 951 F.2d 1504, 1507 (9th Cir. 1991) (citing Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 854 (9th Cir. 1985)). Defendants' motion for summary judgment with respect to Plaintiff's claims based on denial of his

---

[6] Defendants also state, "Even though Plaintiff did not have regular access to the prison chapel before January 2008, his rights were not violated because prison officials are not required to provide a chapel for every faith regardless of size." Motion at 22 (citing Cruz, 405 U.S. at 322 n.2). However, this is not sufficient to establish as a matter of law that Defendants' refusal to allow HOYY members to use the chapel or gather for group worship was not a violation of Plaintiff's rights.

17

request to use the chapel is denied.

## II. Motion to Dismiss

Defendants also argue that Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies as required by the PLRA.

Title 42 U.S.C. § 1997e(a), amended by the PLRA, provides, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." Id. Even when the relief sought, such as monetary damages, cannot be granted by the administrative process, a prisoner must still exhaust administrative remedies. Id. at 2382-83 (citing Booth, 532 U.S. at 734).

An action must be dismissed unless the prisoner exhausted his or her available administrative remedies before he or she filed suit, even if the prisoner fully exhausts while the suit is pending. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed). However, the PLRA does not require dismissal of the

18

entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. Jones v. Bock, 127 S. Ct. 910, 925-26 (2007) (rejecting "total exhaustion-dismissal" rule); Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005).

The PLRA exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford, 126 S. Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." Jones, 127 S. Ct. at 922-23. The level of detail necessary in a grievance to comply with the procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Id. at 923.

Defendants argue that Plaintiff's claims must be dismissed for failure to exhaust his administrative remedies. However, Plaintiff has produced multiple appeal forms submitted before he originally filed this case. See, e.g., Dominguez Decl., Exs. E and I (Forms 602 filed in 1999 and 2000). Defendants argue that the TAC only concerns events that took place between 2005 and 2007. See TAC ¶¶ 16-21; 26-28. However, the TAC also contains general undated allegations regarding the alleged constitutional violations. See, e.g., TAC ¶¶ 14-15; 23-25.

Defendants' motion to dismiss for failure to exhaust is

19

denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and for summary judgment is GRANTED in part and DENIED in part (Docket No. 157). To the extent Plaintiff has sued Defendants Lamarque and Tilton in their individual capacities, the Court grants them summary judgment on all claims against them. The motion is denied on all other grounds.

IT IS SO ORDERED.

Dated:  8/6/08

CLAUDIA WILKEN
United States District Judge