1   COOLEY GODWARD KRONISH LLP
    THOMAS J. FRIEL, JR. (80065) (tfriel@cooley.com)
2   JAMES DONATO (146140) (jdonato@cooley.com)
    ANGELA L. DUNNING (212047) (adunning@cooley.com)
3   ERIN DOMINGUEZ (252954) (edominguez@cooley.com)
    101 California Street, 5th Floor
4   San Francisco, CA  94111-5800
    Telephone:     (415) 693-2000
5   Facsimile:     (415) 693-2222

6   Attorneys for Plaintiff
    ANTHONY L. ROBINSON
7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11

12  ANTHONY L. ROBINSON,                    Case No.  C02-1538 CW (PR)

13              Plaintiff,                  **PLAINTIFF ANTHONY ROBINSON'S
                                            OPPOSITION TO DEFENDANTS' MOTIONS
14         v.                               IN LIMINE**

15  ROGELIO DELGADO *et al.*,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to paragraph 3(f) of the Court's Order for Pretrial Preparation, plaintiff Anthony Robinson ("Robinson") respectfully submits his opposition to Defendants' Motions in Limine as follows:

## I.      MOTION IN LIMINE NO. 1: FOR PLAINTIFF TO BE RESTRAINED DURING TRIAL

Defendants argue that Robinson should be shackled during trial based on a perceived but unsubstantiated security risk. However, such an order is only justified as a last resort in cases of extreme need or in cases urgently demanding that action. *Wilson v. McCarthy*, 770 F.2d 1482, 1484-85 (9th Cir. 1985) (citations omitted). Shackling should not be ordered unless compelling circumstances so require and, even then, the court must first pursue less restrictive alternatives. *Morgan v. Bunnell*, 24 F.3d 49, 51 (9th Cir. 1994). For example, shackling may be proper where there is a serious threat of escape, danger to those in and around the courtroom, or where disruption is likely in the absence of shackles. *Wilson*, 770 F.2d at 1485. Indeed, in the cases cited by Defendants, the prisoner-parties had demonstrated a propensity for escape and violence that warranted increased security measures. No such circumstances are present in this case.

In *Morgan*, just before the trial, the prisoner-party had "asked another inmate what courthouse security was like, how easy it would be to escape and whether the inmate could find someone [he] could pay to arrange his escape or intimidate witnesses." 24 F.3d at 51. In deciding whether to shackle him, the court also considered that several witnesses against the prisoner-party had died violently before, during, and after trial in a previous case. *Id.* Further, on two separate occasions, he had acted unruly in a courtroom: once he demanded to be returned to jail before the court had recessed for the day, and another time he had to be physically restrained and forced to return to the holding facility. *Id.* Lastly, the court considered the brutality by which he had murdered his victims. *Id.*

The prisoner-witness in *Wilson* had been convicted of murder, robbery and burglary, and belonged to the same prison gang at issue in the case. 770 F.2d at 1485. A prison official testified that the prisoner-witness had been a "hit man" and involved with transporting weapons for the prison gang, suggesting that "the presence of authorities did not necessarily deter him from engaging in illegal activities." *Id.* at 1483, 1485. Even in *Wilson*, the Ninth Circuit held

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE
C02-1538 CW (PR)

1    that although the trial court did not abuse its discretion in allowing shackles, there was "some

2    concern over the apparent failure of the trial court to consider less drastic alternatives to

3    shackling.  Consideration of less drastic alternatives should be part of the trial judge's balancing

4    of the defendant's rights and the needs for security." *Id.* at 1486.

5        Here, there are no compelling circumstances that require Robinson to be shackled during

6    the trial.  Robinson is the plaintiff in this case, and seeks an award of damages from the jury

7    based on constitutional deprivations.  He has no interest in disrupting the proceedings, escaping,

8    or causing any harm to anyone.  Nor has Robinson demonstrated any potential for escape,

9    violence in the courtroom, or disruption.  Moreover, armed prison escorts and the bailiff will be in

10   the courtroom to ensure order.

11       Defendants point to Robinson's 1991 conviction for second-degree murder, his two

12   battery convictions, and his disciplinary record as justifications for shackling him during trial

13   However, these facts hardly create compelling circumstances warranting shackling.  First,

14   Robinson's conviction, which is now more than seventeen years old, was for a gang-related drive-

15   by shooting, for which he was the driver and the passenger was the shooter.  In prison, Robinson

16   renounced his former gang connections.  Second, the convictions for battery in 2001 stem from an

17   incident on January 5, 2000 between Robinson and correctional officers in which Robinson

18   alleged excessive force.[1]  He contested the battery convictions at the time, and does so still today.

19   Third, Robinson's disciplinary record does not demonstrate a long history of violence, as

20   Defendants argue.  Most of the alleged violations involve obstructing a peace officer or failing to

21   comply with an order, such as refusing to relinquish a food tray because it had meat on it.  None

22   of the records give information on the nature of the offense or how prison officials determined

23   guilt, nor do they bear any indicia of due process or reliability.  Only a handful of violations,

24   including some altercations with staff in January 2000, mention physical violence at all.  Of these,

25   three of them report no serious bodily injury and Robinson received no credit forfeitures (see

26

27

28

---

[1] This claim for the use of excessive force was previously a claim in this case, but dismissed at summary judgment based on a procedural issue (Docket No. 94).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE
C02-1538 CW (PR)

1  records from July 23, 2002).  In addition, many of the disciplinary violations are over 10 years

2  old.

3       In their motion, Defendants argue that Robinson can use a tablecloth or curtains to cover

4  restraints.  This is not practical.  Robinson will testify at trial, and the use of restraints, even if

5  hidden, will become apparent to the jury.  Knowing that Robinson is a prisoner, the jury will

6  notice the lack of bodily movement and inability to speak with his hands.  If he does move his

7  hands or body, the jury will see the restraints.  The use of restraints will have a psychological

8  effect on the jury that will prejudice Robinson.  Moreover, restraints will impair Robinson's

9  mental faculties and impede communication between Robinson and his counsel.

10       Finally, Defendants cite to *Parrish v. Small* and *Duckett v. Godinez* for the proposition

11  that no prejudice exists if the jury cannot see the shackles.  315 F.3d 1131 (9th Cir. 2003); 109 F.

12  3d 533 (9th Cir. 1997).  However, in both of those cases, the court actually ruled that the inmate

13  should not have been shackled.  In *Parrish*, the Court of Appeal recognized that the trial judge did

14  not have adequate justification for shackling while holding that the error was not prejudicial

15  because the jury did not see the shackles.  315 F.3d at 1133-34.  The Ninth Circuit vacated the

16  judgment and remanded the case for an evidentiary hearing on what the jurors saw and whether

17  such viewing was so inherently prejudicial that it threatened the fairness of the trial.  *Id*. at 1135.

18  In *Duckett*, the Ninth Circuit previously had held that the prisoner-party's constitutional rights

19  were violated when he was forced to appear in restraints before his sentencing jury and was

20  considering whether the error was harmless.  109 F. 3d at 534.  The court held that the "degree of

21  prejudice is a factor of the extent of the chains applied and their visibility to the jury." *Id*. at 535

22  (citations omitted).  Thus, contrary to Defendants' contention, no case stands for the proposition

23  that shackling in non-compelling circumstances is otherwise appropriate so long as the shackles

24  are made invisible to the jury.

25       Because there are no compelling circumstances that warrant shackling Robinson, the

26  Court should deny Defendants' Motion in Limine in its entirety.

27

28

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE
C02-1538 CW (PR)

**II.    MOTION IN LIMINE NO. 2: PLAINTIFF SHOULD NOT BE PERMITTED TO SEEK PUNITIVE DAMAGES BASED ON HIS FAILURE TO PROVIDE DEFENDANTS WITH REASONABLE NOTICE THAT PUNITIVE DAMAGES WOULD BE SOUGHT**

**A.    Robinson is entitled to punitive damages even if he did not specifically pray for them in his Third Amended Complaint.**

To establish a claim for excessive force in violation of the Eighth Amendment, an inmate must prove by a preponderance of the evidence that defendants applied force against him maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Thus, there is no dispute that punitive damages are an appropriate remedy for an excessive force claim. *See Dang v. Cross* 422 F.3d 800, 807 (9th Cir. 2005) (holding that "malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and . . . are therefore all proper predicates for punitive damages under § 1983") (citing *Smith v. Wade,* 416 U.S. 30, 49 (1983)); *see also Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir. 1993) ("It is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'").

In their Motion in Limine, Defendants contend that Robinson cannot seek punitive damages at trial because Robinson did not specifically pray for them in his Third Amended Complaint. However, the Federal Rules of Civil Procedure make clear that "[e]very other final judgment [aside from default judgments] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *see also Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978) (holding that "although the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim.") Moreover, the Ninth Circuit has held that "if a party, by virtue of Rule 54(c), is entitled to some form of relief beyond that included in the judgment, the time to demand such relief is immediately after the entry of judgment (Rule 59(e)), or at the latest, on appeal." *Brotherhood of Locomotive Firemen and Enginemen v. Butte, A. & P. Ry. Co.*, 286 F.2d 706, 709

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE
C02-1538 CW (PR)

(9th Cir. 1961); *see also Rental Dev. Corp. of Am. v. Lavery*, 304 F.2d 839 (9th Cir. 1962) (upholding a grant of relief not prayed for in the complaint because the plaintiff did include the usual prayer for "such other relief as to the Court may seem just and proper," and the opposing party was aware prior to trial that the court might order such relief.)  Thus, there is no doubt that Robinson's request for punitive damages is timely.

Defendants argue that they have been prejudiced by a lack of notice that Robinson intended to seek punitive damages.  More specifically, they claim that they would have moved for summary judgment on punitive damages but have now been denied that opportunity.  However, the standard for punitive damages is the same standard for excessive force: each claim depends on the malicious conduct of the defendants.  *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (holding that plaintiff must demonstrate that defendants applied force maliciously and sadistically for the very purpose of causing harm); *see also* Ninth Circuit Model Civil Jury Instruction 5.5 (jury may award punitive damages if it finds "that the defendant's conduct was malicious, oppressive or in reckless disregard of the plaintiff's rights").  Defendants moved for summary judgment on the excessive force claim, and the Court denied their motion because the facts as alleged by Robinson demonstrated the malicious and sadistic use of force.  (Order at 5-6.)  Moreover, even though Robinson's previous complaint sought punitive damages in the amount of 613 million dollars, Defendants did not separately move for summary judgment on the issue of punitive damages. (Docket No. 67.)  Finally, Robinson made clear to Defendants that he would be seeking punitive damages at trial no later than August 8, 2008, when the parties exchanged drafts of their pretrial submissions.  Thus, Defendants were given an opportunity to contest his request for punitive damages, and in fact have now done so, by bringing their motion in limine.  Thus, Defendants have not and cannot demonstrate prejudice relating to Robinson's request for punitive damages.

Robinson is not seeking to introduce a new claim, but rather seeks additional damages for an existing claim.  There is no question that, if Robinson prevails on his Eighth Amendment claim at trial, he would be entitled to punitive damages.  In conformity with Federal Rule of Civil Procedure 54(c), Robinson is entitled to request and receive punitive damages notwithstanding that his Third Amended Complaint inadvertently failed to pray for them.

Cooley Godward
Kronish LLP
Attorneys At Law
San Francisco

5.

Opposition to Defendants'
Motions in Limine
C02-1538 CW (PR)

**B.    The issue of punitive damages should not be bifurcated.**

There is a presumption that all claims in a case will be resolved in a single trial, and "it is only in exceptional instances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials." *Miller v. Am. Bonding Co.*, 257 U.S. 304, 307 (1921).  Factors that courts consider in determining whether bifurcation is appropriate include: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.  *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001).

In *Dallas*, a Section 1983 action in which the plaintiff alleged compensatory and punitive damages, the Court denied the defendants' motion to bifurcate the punitive damage and net worth issues because the defendants failed to demonstrate that bifurcation would avoid undue prejudice or that bifurcation would be conducive to expedition and economy.  *Id*. at 315-16.  *See also De Anda v. City of Long Beach*, 7 F.3d 1418 (9th Cir. 1993) (holding that the trial court abused its discretion in bifurcating claims in a civil rights action where the plaintiff would be prejudiced and where the bifurcated claims significantly overlapped.)  In Robinson's case, the issue of compensatory damages will already be a part of the liability phase of the trial.  Moreover, Robinson will use the same documentary and testimonial evidence for both the liability issues and damages.  Thus, the issues on Robinson's liability claims and request for damages directly relate to one another and significantly overlap.  In addition, bifurcation would not in any way promote convenience or judicial economy.

Defendants fail to demonstrate any potential for prejudice or any unusual circumstances that warrant separate trials in this case.  They offer only generalized assertions that punitive damages should be bifurcated from the liability phase, and that bifurcation would prevent Defendants from revealing any personal information to a convicted felon.  At the Case Management Conference on October 23, 2007, this Court specifically ordered that there shall be

1    no bifurcation of liability and damages.  Defendants have failed to establish any reason why the

2    Court should reconsider that Order at this late date.

3

4    Dated:  August 25, 2008                         COOLEY GODWARD KRONISH LLP

5

6                                                              /s/ Angela L. Dunning

7                                                       Angela L. Dunning (212047)

8                                                Attorneys for Plaintiff
     ANTHONY L. ROBINSON

9    1100630 v1/SF

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE
C02-1538 CW (PR)