**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ANTHONY L. ROBINSON, | No. CV 02-1538 NJV |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS IN LIMINE** |
| v. | (Docket Nos. 186 & 191) |
| ROGELIO DELGADO, et al., | |
| Defendants. | |

Before the Court are the following motions in limine: 1) Defendants' Motion In Limine No. 1 and Plaintiff's Motion In Limine No. 3 regarding shackling of the Plaintiff during trial; 2) Defendants' Motion In Limine No. 2 to prohibit Plainitff from seeking punitive damages; 3) Plaintiff's Motion In Limine No. 1 to exclude prior criminal convictions; 4) Plaintiff's Motion In Limine No. 2 to exclude Plaintiff's prior prison disciplinary record; 5) Plaintiff's Motion In Limine No. 4 to exclude testimony by Defendants' expert, David Tristan, regarding whether Defendants used excessive force on Plaintiff; 6) Plaintiff's Motion In Limine No. 5 to exclude other evidence regarding Plaintiff's religion; and 7) Plaintiff's Motion In Limine No. 6 to require Defendants to address Plaintiff by his name. (Doc. Nos. 186 & 191) Having reviewed the parties' papers, heard oral argument, and carefully considered the relevant legal authority, and good cause appearing, the Court hereby 1) **GRANTS in part and DENIES in part** Defendants' Motion In Limine No. 1 and Plaintiff's Motion In Limine No. 3 regarding shackling of the Plaintiff during trial; 2) **DENIES** Defendants' Motion In Limine No. 2 regarding punitive damages; 3) **GRANTS in part and DENIES in part** Plaintiff's Motion In Limine No. 1 to exclude prior criminal convictions;

4) **GRANTS** Plaintiff's Motion In Limine No. 2 to exclude Plaintiff's prior prison disciplinary record; 5) **GRANTS** Plaintiff's Motion In Limine No. 4 to exclude testimony by Defendants' expert regarding whether Defendants used excessive force on Plaintiff; 6) **GRANTS** Plaintiff's Motion In Limine No. 5 regarding other religious evidence; and 7) **GRANTS** Plaintiff's Motion In Limine No. 6 to address Plaintiff by his name.

## BACKGROUND

As set out more fully in the Court's earlier orders, Plaintiff is a prisoner serving a sentence of twenty-three years to life for second degree murder with a firearm, with enhancements for being a habitual criminal.[1] During his incarceration, Plaintiff became a member of the House of Yahweh Yadhaim ("HOYY"). Since joining HOYY, Plaintiff has filed numerous inmate appeals regarding his right to free exercise of his religion under the First Amendment, which forms the basis for Plaintiff's claim against Defendant Cate, secretary of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff's claim against Defendants Delgado and Olivarria, CDCR correctional officers, arises from a physical altercation that occurred on March 25, 2001 as they were escorting Plaintiff to and from a prison visitor center. Plaintiff's original complaint, which was filed *pro se*, alleged eleven causes of action against ninety-two defendants. Of those original claims, two remain: (1) an Eighth Amendment excessive force claim against Defendants Delgado and Olivarria, which arises from the March 25, 2001 altercation; and (2) a claim against Defendant Cate under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based on Defendants' failure to provide Plaintiff with a Kosher diet or access to the prison chapel for group worship. The remaining claims are set for trial beginning on May 10, 2010.

///

///

///

---

[1] For a detailed account of the procedural history of this case, see Judge Wilken's April 8, 2008 order granting Plaintiff's motion for leave to file a third amended complaint and Judge Wilken's August 6, 2008 order granting in part and denying in part Defendants' Motion to Dismiss and for Summary Judgment. (Doc. Nos. 143 & 173)

2

**DISCUSSION**

**I.     Defendants' Motion In Limine No. 1 & Plaintiff's Motion In Limine No. 3:  Shackling of Plaintiff During Trial**

Defendants move in limine to shackle Plaintiff's waist and legs during trial.  Plaintiff moves in limine to be free from restraints.[2]  In determining whether shackling Plaintiff is appropriate during trial the Court must consider two factors.  The Court must first determine if compelling circumstances demonstrate that some measure is needed to maintain the security and decorum of the courtroom.  *Morgan v. Bunnell,* 24 F.3d 49, 51 (9th Cir. 1994); *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985).  Compelling circumstances may include prisoner status, propensity for violence, and history of unruly conduct.  *See Wilson*, 770 F.2d at 1485.  If the Court finds compelling circumstances exist, then it must pursue less restrictive alternatives by balancing prejudicial effects before imposing physical restraints.  *Morgan*, 24 F.3d at 51; *Wilson*, 770 F.2d at 1484.

Defendants argue that Plaintiff, who is a convicted state prisoner, should be shackled to maintain the security of the Court.  (Doc. No. 186)  Prisoner status, standing alone, may not warrant shackling, but it may justify the Court's concern for security.  *Wilson*, 770 F.2d at 1485.  The Court has wide discretion in determining whether a party with a propensity for violence poses a security risk and warrants increased security.  *Morgan,* 24 F.3d at 51.  In the present case, Plaintiff has been convicted of one count of second degree murder and two counts of battery on a peace officer.  While incarcerated, Plaintiff has received multiple disciplinary infractions involving physical violence or threats of physical violence.  (Doc. No. 186)  Plaintiff's record of violence and status as a Level IV maximum security inmate are reliable indicators of his propensity for violence.  This is sufficient to conclude he poses a security risk.

In addition to security concerns, shackling may also be proper where disruption of the courtroom is likely in the absence of shackles.  *See Wilson*, 770 F.2d at 1485.  In *Morgan*, one consideration the court used to uphold the shackling of a prisoner-party was his unruly and insubordinate behavior in the courtroom.  24 F.3d at 51.  In the present case, Plaintiff has a lengthy

---

[2]  The parties previously agreed that Plaintiff would appear during trial in civilian clothing.

3

record of disciplinary infractions involving insubordination to correctional officers and refusal to comply with prison regulations. Many of these infractions have involved physical resistance or violence by Plaintiff. One incident involved disrespectful behavior at the Monterey County Courthouse. (Doc. No. 186) Because of Plaintiff's history involving violence and incidents of insubordinate, aggressive behavior, the Court finds that shackling the Plaintiff is appropriate to maintain the security and decorum of the court.

When finding that restraining a party is appropriate, the court must next balance the prejudicial effect of shackling with considerations of preserving courtroom decorum and security. *Wilson*, 770 F.2d at 1484. In balancing, the court must consider less drastic alternatives. *Id.* at 1486. In *Morgan*, the court found that removing handcuffs during trial and excusing the jury when the restrained party walked to the stand was sufficient to protect against the prejudicial effects of being shackled. 24 F.3d at 51. Although the Court recognizes the need to restrain Plaintiff to ensure security and decorum in the courtroom, shackling his arms and waist in the jury's presence is an unnecessary measure and potentially prejudicial. To minimize the potential for prejudice, the Court concludes that keeping Plaintiff in leg restraints properly balances the prejudicial effects of shackling with preserving security. Plaintiff will have any restraints placed on his arms, waist, or hands removed before the jury enters the courtroom, and replaced outside the jury's presence. During the final pretrial conference on April 30, 2010, the parties expressed their agreement with this Court's order regarding shackling.

The Court **GRANTS in part and DENIES in part** Defendants' Motion In Limine No. 1 and Plaintiff's Motion in Limine No. 3. The Court **ORDERS** Plaintiff to remain shackled with leg restraints in the jury's presence. The Court **ORDERS** that Plaintiff be escorted into the courtroom before the jury enters and escorted out of the courtroom after the jury departs.

**II.     Defendants' Motion In Limine No. 2:  Punitive Damages**

Defendants move in limine to prevent Plaintiff from demanding punitive damages based on Plaintiff's failure to provide reasonable notice of this demand.

4

### A. Plaintiff is entitled to seek punitive damages even if he did not specifically request them in his Third Amended Complaint.

Defendants' motion in limine claims that all arguments, evidence, and testimony regarding punitive damages should be excluded at trial because Plaintiff failed to request punitive damages in his third amended complaint. (Doc. No. 186) Plaintiff requested punitive damages in his original complaint and second amended complaint but failed to do so in his third amended complaint.

Defendants argue that claims that are not re-alleged in the third amended complaint are waived and no longer before the court. *See Marx v. Loral Corp.,* 87 F.3d 1049, 1056 (9th Cir. 1996); *London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1984). Plaintiff contends that under Federal Rule of Civil Procedure Rule 54(c), "[e]very other final judgment [aside from default judgments] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The Ninth Circuit has held that "if a party, by virtue of Rule 54(c), is entitled to some form of relief beyond that included in judgment, the time to demand such relief is immediately after the entry of judgment (Rule 59(e)), or at the latest, on appeal." *Brotherhood of Locomotive Firemen and Enginemen v. Butte, A. & P. Ry. Co.*, 286 F.2d 706, 709 (9th Cir. 1961). Rule 54(c) provides that the latest point at which the plaintiff may demand punitive damages would be on appeal. In this case, Plaintiff's demand for punitive damages is timely.

In *Red Rock Communications, Inc. v. American Telecasting, Inc.*, the defendants moved to strike the plaintiffs' claim for punitive damages because they did not specifically demand punitive damages in their amended complaint. 2006 WL 2432628, *4 (D. Nev. 2006) (not reported). Under Rule 54(c), the court found that the plaintiffs did not need to specifically claim punitive damages in their complaint, so long as they allege conduct in their complaint that would support punitive damages. *Id.* at *5. In this case, Plaintiff is claiming excessive force in violation of the Eighth Amendment, for which punitive damages are clearly appropriate. *See Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Plaintiff is therefore entitled to demand punitive damages.

If the failure to demand relief has prejudiced the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings. *Rental Development Corp. of America v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962). Defendants argue that they have been prejudiced by Plaintiff's request for punitive damages because of lack of notice. In *Cancellier v.*

5

*Federated Dept. Stores*, the Ninth Circuit found under Rule 54(c) that punitive damages were appropriate even though the demand was not in the pleading. 672 F.2d 1312, 1318-19 (9th Cir. 1982). The defendant argued that Rule 54(c) was inapplicable because they were prejudiced by lack of notice. The court used the plaintiff's itemized pretrial statement seeking punitive damages as one consideration in finding sufficient notice. *Id.* In this case, on August 8, 2008, Plaintiff provided a draft of his pretrial statement to Defendants where he made clear he would seek punitive damages at trial. The timing of Plaintiff's demand for punitive damages is even less prejudicial given that trial was originally scheduled for June 25, 2008 and was rescheduled to May 10, 2010. Defendants have received sufficient notice and under Rule 54(c) have not been prejudiced by Plaintiff's demand for punitive damages.

### B. The issue of punitive damages will not be bifurcated.

Defendants argue that the Court should bifurcate trial under Federal Rule of Civil Procedure 42(b), which grants the Court discretion to separate trial of any issue for the purpose of convenience, to avoid prejudice, or in the interest of expedition and economy. Defendants have not provided any facts to support how bifurcation would be convenient, would avoid prejudice, expedite proceedings, or promote judicial economy. The presumption is that all claims will be resolved in a single trial, barring exceptional situations where there are special and persuasive reasons for bifurcating. *See Miller v. Am. Bonding Co.*, 257 U.S. 304, 307 (1921). Defendants have failed to overcome this presumption. Also, at the October 22, 2007 Case Management Conference, the Court specifically ordered parties not to bifurcate liability and punitive damages. (Doc. No. 117) Defendants have failed to address this order or provide reasons why this order is no longer appropriate.

The Court **DENIES** Defendant's Motion In Limine No. 2. Plaintiff is entitled to request punitive damages at trial. The Court further **DENIES** Defendant's request to bifurcate the issue of punitive damages. Plaintiff must file an amended complaint adding his request for punitive damages by May 6, 2010.

### III. Plaintiff's Motion In Limine No. 1: Prior Criminal Convictions

Plaintiff moves in limine to exclude evidence of his three prior convictions: 1) a 1991 conviction for second-degree murder, his commitment offense; 2) a 1983 conviction for involuntary

manslaughter; and 3) a 2001 conviction for battery under California Penal Code § 4501.5. During the April 30, 2010 final pretrial conference, Plaintiff further argued that the 2001 conviction is additionally prejudicial because it is close in time to the March 2001 incident at issue in this case and involves similar conduct.

Evidence of Plaintiff's prior convictions is not admissible because the prior convictions are not relevant to the present civil action, which is based on Plaintiff's religious claims and civil rights claim for excessive force. *See* Fed. R. Evid. 402 & 404(b). In addition, the probative value of Plaintiff's conviction evidence is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

Plaintiff's conviction evidence may be admissible, however, for the limited purpose of impeachment. Under Federal Rule of Evidence 609(a), evidence of a witness' conviction for crimes punishable by death or by imprisonment for over one year shall be admitted for impeachment purposes if the court determines that the probative value outweighs its prejudicial effects. Evidence of such a conviction, however, is generally not admissible for impeachment purposes if more than ten years has elapsed since the date of the conviction or the release of the witness from confinement, whichever is later. Fed. R. Evid. 609(b). Here, Rule 609(b)'s ten year time limit does not apply to the 1991 second-degree murder conviction or the 2001 battery conviction, but does apply to the 1983 involuntary manslaughter conviction. Plaintiff is still serving his twenty-three years to life sentence for the 1991 second-degree murder conviction and ten years have not elapsed since the 2001 battery conviction. The parties agree that more than ten years have elapsed since the 1983 involuntary manslaughter conviction or the date Plaintiff was released from confinement for the 1983 involuntary manslaughter conviction.

The Court therefore **GRANTS in part and DENIES in part** Plaintiff's Motion In Limine No. 1. Evidence of Plaintiff's 1983 involuntary manslaughter conviction is inadmissible, even for impeachment purposes. Evidence of Plaintiff's 1991 second-degree murder and 2001 battery convictions is admissible for the limited purpose of impeachment. In the event that this evidence is admitted for impeachment purposes, Defendants are limited to only asking whether Plaintiff was convicted of two felonies. No further questioning will be permitted. All documents regarding

7

Plaintiffs' convictions are inadmissible, including Exhibits 11 and 33. (Doc. No. 248, Amended Joint Exhibit List)

**IV.     Plaintiff's Motion In Limine No. 2:  Prior Prison Disciplinary Record**

Plaintiff moves to exclude all evidence and testimony of his prison disciplinary record for all purposes, including impeachment. Defendants argue that Plaintiff's prison disciplinary record is relevant to rebut Plaintiff's claims, for impeachment, and to show motive, bias, intent or plan.[3] Defendants propose to introduce a document listing Plaintiff's prison disciplinary record from 1993-2008. *See* Joint Ex. 12 (Doc. Nos. 181 & 248, Ex. A); *see also* Defs.' Mots. In Limine, Ex. C (Doc. No. 186). The Court grants Plaintiff's motion because Plaintiff's prison disciplinary record is not relevant, is prejudicial, constitutes inadmissible character evidence of other wrongs or acts, and is inadmissible hearsay. *See* Fed. R. Evid. 402, 403, 404(b), & 802.

First, evidence of Plaintiff's prison disciplinary record is not admissible because it is not relevant to the present civil action. *See* Fed. R. Evid. 402. Defendants have failed to identify which specific disciplinary incidents from this record, if any, are relevant to the present civil action, i.e., the March 25, 2001 incident or Plaintiff's religious diet and group worship claims.

Second, the probative value of Plaintiff's prison disciplinary record is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury and considerations of wasting the time of the Court, jury, and parties. *See* Fed. R. Evid. 403. Presenting Plaintiff's past incidents of prison discipline may prejudice the jury against Plaintiff and confuse, distract, and mislead the jury from the main issues in this action. And given the hearsay problems with the prison disciplinary record described below, Defendants would need to call witnesses with personal knowledge to testify regarding each disciplinary incident, which would waste time during trial.

Third, Plaintiff's prison disciplinary record constitutes inadmissible character evidence of other wrongs or acts. Fed. R. Evid. 404(b). To the extent that Defendants are able to identify

---

[3] Defendants also oppose Plaintiff's motion based on Plaintiff's delay in providing his motion to Defendants before filing the motion. This argument is moot given that there is no prejudice to Defendants where the motion in limines were originally filed in August 2008 and trial has since been rescheduled to begin on May 10, 2010.

8

specific disciplinary incidents to show Plaintiff's intent, plan, or motive to disrupt the prison and retaliate against prison staff on March 25, 2001, Defendants may introduce such evidence.

Finally, Plaintiff's prison disciplinary record constitutes inadmissible hearsay and Defendants have not established an exception to the prohibition against hearsay. Fed. R. Evid. 801-803.

The Court therefore **GRANTS** Plaintiff's motion with limitations and holds that Defendants are prohibited from presenting evidence or testimony of Plaintiff's prison disciplinary record. Defendants may, however, present evidence regarding the prison's procedure for escorting Administrative Segregation inmates and Plaintiff's placement in Administrative Segregation at the time of the March 25, 2001 incident. In addition, during trial, if Plaintiff presents testimony or other evidence that opens the door to his prison disciplinary record, Defendants may move at that time to introduce evidence of Plaintiff's prison disciplinary record for impeachment and rebuttal purposes. If Plaintiff opens the door to such evidence, Defendants must ask for leave out of the jury's presence to introduce this evidence.

## V.      Plaintiff's Motion In Limine No. 4:  Defendants' Expert David Tristan

Plaintiff moves to exclude testimony by Defendants' expert David Tristan regarding his opinion as to whether excessive force was used against Plaintiff. Plaintiff does not move to exclude testimony by Defendants' expert in its entirety, but solely on his opinion as to whether excessive force was used against Plaintiff.

Depending on the individual circumstances, courts differ on whether expert testimony is proper for excessive force claims. *Compare Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (reversing grant of summary judgment) (finding that jury may rely on expert testimony in determining "whether the officers' use of force was unreasonable"); *Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1159 (N.D. Cal. 2009) (holding that defendants' use of force was excessive, relying in part on testimony by defendants' use of force expert); *Bates v. King County*, 2007 WL 1412889, *3 (W.D. Wash. 2007) (admitting plaintiff's police practices expert, reasoning that "[t]he appropriate response by a police officer to a person resisting arrest is not necessarily common knowledge. Expert testimony from an experienced law enforcement professional would

9

assist the jury in understanding whether a particular officer exerted excessive force. The proper response of a police department to complaints about excessive force used by officers is also not common knowledge. Expert testimony concerning the proper response would thus help the jury to understand the facts and make an informed decision as to the department's actions."); *with Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) (holding trial judge properly excluded expert testimony in an excessive force case where the issue was whether the danger posed by the suspect was sufficiently lethal and imminent to justify the use of deadly force and this issue was "within lay competence"); *Jimenez v. Sambrano*, 2009 WL 2382622, *2 (S.D. Cal. July 31, 2009) (slip copy) (excluding defendants' use of force expert where the determination of "whether the force Defendants used was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm"was within the jury's knowledge, did not involve complex facts, and ultimately, was a credibility determination for the jury).

Here, the Court finds that expert testimony on whether excessive force was used on Plaintiff is not permitted because this factual determination is properly within the jury's province and expert testimony will not assist the jury in making its determination. *See* Fed. R. Evid. 702 & 703. Defendants' expert may, however, provide testimony on prison standards and the jury may rely on such testimony in making its determination on the ultimate factual issue. The Court therefore **GRANTS** Plaintiff's Motion In Limine No. 4.

### VI.     Plaintiff's Motion In Limine No. 5:  Other Religion Evidence

Plaintiff moves to exclude evidence regarding Plaintiff's religion unrelated to dietary and group worship issues, fearing that Defendants will refer to Plaintiff's religion derogatively or negatively. Defendants' initial opposition was based on Plaintiff's delay in providing his motion to Defendants before filing the motion. This argument is moot given that there is no prejudice to Defendants where the motion in limines were originally filed in August 2008 and trial has since been rescheduled to begin on May 10, 2010.

The Court **GRANTS** Plaintiff's motion in limine. Defendants may not refer to Plaintiff's religion derogatively or negatively because such evidence is not relevant and even if somehow relevant, substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 402 & 403.

Defendants may refer to Plaintiff's religion to test the sincerity of Plaintiff's religious beliefs regarding diet and group worship. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Plaintiff's religious beliefs outside of those pertaining to diet and group worship, however, are not relevant to his present claims. Fed. R. Evid. 402. Therefore, Defendants may not introduce or refer to irrelevant evidence regarding Plaintiff's religion unrelated to the dietary and group worship issues except to establish foundation or for impeachment purposes.

### VII.  Plaintiff's Motion In Limine No. 6:  Addressing Plaintiff

Plaintiff moves to require that Defendants address Plaintiff as "Mr. Robinson," rather than using terms such as "inmate" or "prisoner." Defendants contend that they should not be required to address Plaintiff by one form of address so long as the form of address used is accurate and not derogatory or demeaning. Defendants further argue that it is common in the prison system for correctional staff and inmates to refer to inmates as "inmates" or "prisoners." To prevent potential prejudice and in an abundance of caution, the Court **GRANTS** Plaintiff's motion. Defendants must refer to Plaintiff by his name, but may, when necessary, refer to Plaintiff's status as an inmate or prisoner so long as doing so is not derogatory or demeaning.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the parties' motions in limine. In summary, the Court:

1) **GRANTS in part and DENIES in part** Defendants' Motion In Limine No. 1 and Plaintiff's Motion In Limine No. 3 regarding shackling of the Plaintiff during trial, and holds that Plaintiff be kept in only leg restraints in the jury's presence;

2) **DENIES** Defendants' Motion In Limine No. 2 regarding punitive damages;

3) **GRANTS in part and DENIES in part** Plaintiff's Motion In Limine No. 1 to exclude prior criminal convictions except for the limited purpose of impeachment;

4) **GRANTS** Plaintiff's Motion In Limine No. 2 to exclude Plaintiff's prior prison disciplinary record;

11

5) **GRANTS** Plaintiff's Motion In Limine No. 4 to exclude testimony by Defendants' expert regarding whether Defendants used excessive force on Plaintiff, but permitting Defendants' expert to testify on prison standards;

6) **GRANTS** Plaintiff's Motion In Limine No. 5 regarding other religious evidence; and

7) **GRANTS** Plaintiff's Motion In Limine No. 6 to address Plaintiff by his name, but permitting Defendants, when necessary, to refer to Plaintiff's status as an inmate or prisoner so long as doing so is not derogatory or demeaning.

**IT IS SO ORDERED.**

Dated: May 3, 2010

NANDOR J. VADAS
United States Magistrate Judge