**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ANTHONY L. ROBINSON,<br><br>  Plaintiff,<br><br>  v.<br><br>ROGELIO DELGADO, et al.,<br><br>  Defendants._____/ | No. CV 02-1538 NJV<br><br>**FINAL PRETRIAL ORDER** |

The parties appeared before the Court for a final pretrial conference on April 30, 2010. This matter is presently set for a jury trial that will begin on Monday, May 10, 2010.

**I.   Trial Logistics**

Trial will take place in Courtroom D on the 15th floor of the Phillip Burton Federal Building and United States Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102. Counsel and the parties shall arrive at Courtroom D and be prepared to commence proceedings no later than 8:30 a.m. on each day of trial. Trial will take place from 9:00 a.m. to 12:00 p.m. and from either 1:00 p.m. to 4:00 p.m. or from 1:15 p.m. to 4:15 p.m. each day, depending on the jury's preference as to the amount of time allocated for lunch. There will be at least one 15-minute break during both the morning and afternoon sessions. Each side shall have a total of 15 hours in which to present its case. On the first day of trial, the parties should plan to complete jury selection,

preliminary jury instructions, opening statements and begin the testimony of Plaintiff's first witness.

### A. Voir Dire

Voir dire will proceed as explained by the Court at the final pretrial conference. No jury questionnaires will be used. An agreed upon statement of the case will be read to all proposed jurors. After the Court conducts its voir dire, each side[1] will have 15 minutes to question prospective jurors. Each side[2] will have three peremptory strikes to exercise after any prospective jurors have been excused for cause. The parties will alternate using their peremptory strikes (Plaintiff, then Defendants, then Plaintiff, etc.). Should either side elect not to utilize a peremptory strike when its turn arises, that strike will be forfeited. The first eight jurors remaining after voir dire is completed and each side has exercised its challenges for cause and peremptory strikes shall comprise the jury.

### B. Objections and Other Issues Regarding Evidence/Testimony

The Court does not permit speaking objections. To the greatest extent possible, the Court admonishes the parties to anticipate when evidentiary issues will arise so that they may be resolved outside of the jury's presence in as efficient a manner as possible. The Court does permit sidebars as necessary.

The parties may present testimony via deposition, answers to interrogatories and responses to requests for admission in accordance with the applicable rules of civil procedure. However, any party intending to present such testimony must inform the Court in advance so that the appropriate instruction may be given to the jury. The Court will utilize Ninth Circuit Model Civil Jury Instructions 2.4 and 2.10 for deposition testimony and interrogatories, respectively, and the Court will craft its own instruction for responses to requests for admissions. These instructions will be included in the tentative set of final instructions that will be provided to the parties on the first day of trial. *See* Section IV, below.

---

[1] Plaintiff shall have 15 minutes and all Defendants, collectively, shall have 15 minutes.

[2] Plaintiff shall have 3 peremptory strikes, and all Defendants, collectively, shall have 3 peremptory strikes.

**II.     Exhibits**

All exhibits are to be pre-marked, tabbed and in binders.  All original exhibits admitted into evidence on any given day must be provided to the courtroom deputy prior to the parties leaving the courtroom.

**A.     Exhibit 25**

Exhibit 25 is a "Crime/Incident Report" ("Report") that purports to describe the facts and circumstances of the March 25, 2001 incident that forms the basis for Plaintiff's claim of excessive force against Delgado and Olivarria.  The Report appears to contain three subparts: (1) a four-page summary of the incident that was prepared by "R. Binkle, Correctional Lieutenant;" (2) a four-page list of "Involved Parties," which does not indicate who authored it; and (3) twenty-six pages of individual statements prepared by Correctional Officers Van Hoose, Traynham, Strader, Delgado, Olivarria, Parsons, Halstead, Miranda, McClellan, and Renteria.

Plaintiff argues that Exhibit 25 should be excluded as hearsay with regard to the individuals who prepared or contributed to the Report and who will not be testifying at trial.[3]  Plaintiff also claims that the portions of Exhibit 25 that describe facts and circumstances that took place after the alleged use of excessive force by Delgado and Olivarria should be excluded as irrelevant and highly prejudicial pursuant to Federal Rule of Evidence 403.  Specifically, Plaintiff claims that he was reasonably agitated after allegedly being subjected to excessive force by Delgado and Olivarria, and that his actions and the statements that he made afterwards are both highly prejudicial and irrelevant to whether Defendants used excessive force.  In response, Defendants assert that the Report is admissible under both the business records and public records exceptions to the hearsay rule, and that the Report is relevant to the extent that it will give the jury a better idea of exactly what transpired on March 25, 2001.

Law enforcement reports containing hearsay are admissible, if at all, only under the public records exception contained in Federal Rule of Evidence 803(8).  *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086 (9th Cir. 2000) (internal citations omitted).  Rule 803(8) creates an exception to

---

[3] Plaintiff does not raise a hearsay objection to those portions of the report that were prepared by individuals who will be testifying at trial.

3

the hearsay rule for public records "setting forth ... matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel...." Fed. R. Evid. 803(8)(B). The same rule also creates an exception in civil cases for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C).

Based upon the contents of their individual statements, it appears that (other than Defendants Delgado and Olivarria, who were personally involved) only Officers Strader and Parsons witnessed any part of the facts and circumstances that form the basis for Plaintiff's excessive force claim. That is, the statements provided by Officers Van Hoose, Traynham, Halstead, Miranda, McClellan and Renteria indicate that they did not arrive on the scene until after Plaintiff had been subdued by Delgado and Olivarria, such that none of those individuals personally witnessed any of the acts that form the basis for Plaintiff's excessive force claim. Whether or not those statements are otherwise admissible under the hearsay exception for public records, they are irrelevant and highly prejudicial to Plaintiff and will therefore be excluded pursuant to Federal Rule of Evidence 403.

The individual statements of Officers Delgado, Olivarria, Strader and Parsons, who were involved in or witnessed at least some of the facts and circumstances that give rise to Plaintiff's excessive force claim, are "akin to police officers' reports of their contemporaneous observations of crime" such that they were likely biased by the adversarial nature of the situation. *See, e.g., United States v. Weiland*, 420 F.3d 1062, 1074-75 (9th Cir. 2005). Indeed, Delgado's and Olivarria's reports detail more than their observations of crime; they were the victims of the alleged crime(s) at issue in the report, such that the concern for bias in their statements applies with even more force than it would for an officer reporting third-party observations. The adverse affects of bias on the trustworthiness of reports such as these form the stated basis for the exclusion in Rule 803(8)(B) of "matters observed by police officers and other law enforcement personnel" in criminal cases. *See* Fed. R. Evid. 803(8) advisory committee's note ("Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the

4

confrontation between the police and the defendant in criminal cases."); *cf. Weiland*, 420 F.3d at 1075 ("fingerprinting and photographing a suspect, and cataloguing a judgment and sentence are the types of routine and unambiguous matters to which the public records hearsay exception in Rule 803(8)(B) is designed to apply.")  Although the case at bar is a civil matter, the facts and circumstances under which the individual statements of Officers Delgado, Olivarria, Strader and Parsons were prepared are directly analogous to those that form the basis for the categorical exclusion of such reports in criminal cases.  Because the facts and circumstances underlying the statements at issue are not the types of routine, objective and unambiguous matters to which Rule 803(8) typically applies, and in light of the adversarial nature of the situation, the Court finds that the sources of information and other circumstances underlying the statements of Delgado, Olivarria, Strader and Parsons indicate a lack of trustworthiness sufficient to exclude them from evidence under Rule 803(8)(C).  To the extent that Delgado, Olivarria, Strader and/or Parsons will not testify at trial, their statements contained in Exhibit 25 are excluded from evidence.  To the extent that Delgado, Olivarria, Strader and/or Parsons will testify and be subject to cross-examination at trial, their individual statements contained in Exhibit 25 may be admitted into evidence.

Finally, the Report also contains a four-page summary prepared by "R. Binkele, Correctional Lieutenant" and a four-page list of "Involved Parties," which does not indicate who authored it.  Upon review of these documents, it appears to the Court that they were prepared by reference to the individual statements discussed above.  In that regard, both the summary and the list of involved parties are fraught with the same hearsay, prejudice, bias and trustworthiness concerns that form the basis for the Court's exclusion of the underlying individual statements.  To the extent that the author(s) of these documents will not testify and be subject to cross-examination at trial, the summary and list of involved parties are excluded from evidence for the reasons detailed above.

In sum, in the absence of live testimony at trial of the individuals who prepared the various portions of Exhibit 25, the entirety of that exhibit will be excluded from evidence pursuant to Rules 403, 802 and 803.  To the extent that any of the individuals who contributed to any portion of Exhibit 25 will testify and be subject to cross-examination at trial, only that portion of Exhibit 25

5

that was prepared by and based upon the personal knowledge of the individual(s) who will testify at trial may be entered into evidence.

### B.   Exhibits 23 & 24

At the pretrial conference that took place on April 7, 2009, the Court provisionally admitted Exhibits 23 and 24, subject to the appearance and testimony at trial of the individuals who authored those documents. At the April 30, 2010 final pretrial conference, counsel informed the Court that the authors of Exhibits 23 and 24 will appear and be subject to cross-examination at trial. Assuming that those individuals do appear and testify, Exhibits 23 and 24 will be admitted.

### C.   Exhibits 43-56 and 58

The Court previously ruled that Exhibits 43-56 and 58 may be used only for impeachment purposes or to refresh a witness' recollection, but not in the parties' cases in chief. The parties subsequently agreed to withdraw Exhibit 44. Any remaining issues regarding the admissibility of Exhibits 43, 45-56 and 58 will be dealt with at trial depending on testimony of sponsoring witnesses and/or other indicia of reliability.

### D.   Exhibit 10

Exhibit 10 is Plaintiff's CDCR Chronological History, which includes information dating back to 1991. If Exhibit 10 is moved into evidence at trial, it must be redacted in accordance with the Court's rulings on the parties' motions in limine and objections at trial so that it includes only those portions of Plaintiff's history that the Court has deemed relevant and admissible.

As the Court stated at the final pretrial conference, should additional issues arise regarding the use and/or admissibility of exhibits at trial, the parties should endeavor to anticipate those issues so that they may be addressed in advance out of the presence of the jury.

## III.   Motions in Limine

The parties' motions in limine were addressed in the Court's May 3, 2010 order (Doc. No. 250).

## IV.   Jury Instructions and Verdict Forms

The Court has already provided the parties with a set of preliminary jury instructions, which the Court will read to the jury at the outset of the case. Unless the parties indicate otherwise by

6

close of business on Friday, May 7, 2010, the Court will assume that there are no objections to the set of preliminary jury instructions that was provided to the parties at the April 30, 2010 final pretrial conference.

On the first day of trial, the Court will provide the parties with a tentative set of final jury instructions, which will be tailored to the evidence as trial proceeds. The parties will have the opportunity to object to the final jury instructions after the close of evidence and before they are provided to the jury. The final jury instructions, which will include the preliminary jury instructions mentioned above, will be read to the jury *prior to closing arguments*. One written set of all jury instructions, containing only the text of the instructions, will be provided to the jury for their use during deliberations.

The Court will also provide the parties with a tentative final verdict form on the first day of trial. Like the tentative set of final jury instructions, the tentative final verdict form will also be tailored to the evidence as trial proceeds and the parties will have an opportunity to object to it after the close of evidence and before the jury retires to deliberate.

## V. Legal Issues

### A. Burden of Proof on Plaintiff's Claims

The parties are in agreement that the burden of proof on Plaintiff's claims, including his claim for punitive damages, is a preponderance of the evidence. Therefore, the Court will instruct the jury on only that burden of proof.

### B. No Right to Jury Trial on Equitable Claims

While there is no right to a jury trial as to Plaintiff's equitable claims, the parties agreed at the final pretrial conference that the jury will decide the issues of ultimate fact that bear upon those claims. The Court believes that it has the discretion to allow the jury to do so, and trial will proceed in that manner. The Court will determine the details of any equitable relief to be awarded should the jury find in Plaintiff's favor on any of his equitable claims.

### C. Burden of Proof as to First Amendment and RLUIPA Claims

For the purpose of his First Amendment and RLUIPA claims, Plaintiff asserts that he must demonstrate only that he sincerely believes that maintaining a kosher diet and meeting for group

worship on Saturdays are consistent with his religion. Defendants contend that Plaintiff must demonstrate both that he sincerely believes that he must keep kosher and meet for group worship on Saturdays, and that such beliefs are consistent with House of Yahweh doctrine.

In *Shakur v. Schriro*, the Ninth Circuit Court of Appeals held that it is the sincerity of an inmate's religious belief, rather than the centrality of that belief to his faith, that is relevant to the free exercise inquiry. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (expressly rejecting "centrality test" and holding that "sincerity test" adopted in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir.1994) and *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir.1981) determines whether the free exercise clause is implicated). The *Shakur* court found that "the district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether Shakur sincerely believes eating kosher meat is consistent with his faith." *Id.* (internal quotation marks omitted). As a result, the Ninth Circuit stated that "given his sincere belief that he is personally required to consume kosher meat to maintain his spirituality, we are satisfied, as a threshold matter, that the prison's refusal to provide a kosher meat diet implicates the Free Exercise Clause." *Id.* at 885.

The facts and circumstances of *Shakur* are strikingly similar to those of the present case, such that the law as adopted in *Shakur* is controlling. Although *Shakur* jettisoned the "centrality test" in favor of the "sincerity test," both *Malik* and *Callahan* make clear that the latter requires that the sincerely held belief be religious in nature. *See Malik,* 16 F.3d at 333 (belief must be sincerely held and rooted in religious belief, not in purely secular philosophical concerns); *Callahan*, 658 F.2d at 683-85 (same). To be clear, there is no requirement that the sincerely held belief be central to or mandated by a particular religion as long as it has its basis in religion. *Shakur*, 514 F.3d at 884-85 (citing *Employment Division v. Smith*, 494 U.S. 872, 886-87 ("[i]t is no more appropriate for judges to determine the 'centrality' of religious beliefs before applying a 'compelling interest' test in the free exercise field, than it would be for them to determine the 'importance' of ideas before applying the 'compelling interest' test in the free speech field."); *Levitan v. Ashcroft*, 281 F.3d 1313, 1319 *(*D.C.Cir. 2002) ("A requirement that a religious practice be mandatory to warrant First Amendment protection finds no support in the cases of the Supreme Court or of this court.")). Ninth Circuit case

8

law interpreting RLUIPA agrees. The RLUIPA expanded protection of an individual's right to the free exercise of his religion to include "any 'religious exercise,' including 'any exercise of religion, whether or not compelled by or central to, a system of religious belief.'" *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008).

Accordingly, with regard to his claims under the First Amendment and RLUIPA, Plaintiff must demonstrate that he has a sincerely held belief, rooted in religion, that he must keep kosher and participate in group worship on Saturdays. Plaintiff need not prove that keeping kosher or participating in group worship is a central tenant of, or mandated by, his religion. All that is required to implicate the free exercise clause and RLUIPA under current Ninth Circuit law is that the belief be sincerely held and religious in nature.

### D. Burden of Proof as to Equal Protection Claims

The Equal Protection Clause entitles a prisoner to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972). The parties appear to agree that the applicable legal standard for addressing Plaintiff's equal protection claim is the four-part balancing test announced in *Turner v. Safley*, 482 U.S. 78 (1987). However, they remain at odds as to which of them bears the burden of proving whether any restriction on Plaintiff's constitutional rights is reasonably related to legitimate penological interests. Under the *Turner* test, a restriction on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner*, 482 U.S. at 89). As Judge Wilken stated in her August 6, 2008 order on Defendants' Motion to Dismiss and for Summary Judgment, the burden is on the prison officials to prove that the restriction of the prisoner's exercise of religion was reasonably related to a legitimate penological objective. (Docket No. 173); *see also Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997); *Sandeford v. Plummer*, 2010 WL 1689184, *9 (N.D.Cal. April 26, 2010); *Hamilton v. Hernandez*, 2009 WL 4051079, *10 (N.D.Cal. November 20, 2009).

### E. Qualified Immunity Defense

The parties remain at odds as to whether Defendants may assert a qualified immunity defense at trial after the Court twice denied Defendants' motions for summary judgment on qualified immunity grounds. The denial of a defendant's motion for summary judgment on qualified immunity grounds merely leaves the issue for trial and does not destroy the defense. *Thompson v. Mahre*, 110 F.3d 716, 720 (9th Cir. 1997). "[W]here there is a genuine issue of fact on a substantive issue of qualified immunity, ordinarily the controlling principles of summary judgment and, if there is a jury demand and a material issue of fact, the Seventh Amendment, require submission to a jury." *Id.* at 719 (internal citations omitted). Whether an individual is entitled to qualified immunity "may depend in large part on factual determinations that the jury will be required to make." *Smith v. City of Hemet*, 394 F.3d 689 704 n. 7 (9th Cir. 2005). Indeed, the Ninth Circuit has determined that "a qualified immunity analysis consists of two steps. The first step analyzes whether a constitutional right was violated, which is a question of fact. The second examines whether the right was clearly established, which is a question of law." *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075, 1085 (9th Cir. 2009). Accordingly, Defendants will be permitted to assert their qualified immunity defense at trial.

### VI. Miscellaneous

The Court's electronic evidence presentation cart is NOT available during the trial of this matter. Should the parties desire to present any exhibits via overhead projector, document camera, video/DVD, or other such media, they will need to bring their own equipment, which must be set up and tested no later than Friday, May 7, 2010. Arrangements for set up and testing may be made with the Court's Courtroom Deputy, Frank Justiliano (415-522-3018). Technical questions regarding Court A/V equipment or courtroom technology issues should be directed to the Court's Courtroom Technology Specialist, Ricci Guzman (415-522-2107).

**IT IS SO ORDERED.**

Dated: May 5, 2010

_____
NANDOR J. VADAS
United States Magistrate Judge