**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ANTHONY L. ROBINSON,<br><br>     Plaintiff,<br><br>  v.<br><br>ROGELIO DELGADO, et al.,<br><br>     Defendants.      / | No. CV 02-1538 NJV<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW** |

This is a civil case brought by Plaintiff California state prisoner Anthony L. Robinson based on allegations of excessive force, Defendants' failure to provide Plaintiff with a diet accommodating his sincerely held beliefs regarding the dietary requirements of his religion, the House of Yahweh Yadhaim ("HOYY"), and Defendants' failure to provide Plaintiff with access to the prison chapel for group worship. After Plaintiff rested during trial, Defendants now move for judgment as a matter of law regarding Plaintiff's excessive force and religious diet claims. Having considered the evidence presented at trial and the parties' oral argument, the Court **DENIES** Defendants' motion.

**DISCUSSION**

Defendants bring their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which provides:

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Defendants bring their motion after Plaintiff rested, but before the case has been submitted to the jury. Plaintiff opposes the motion and the Court has heard oral argument on the motion. Therefore, the Court may properly rule on Defendants' motion.

## I. EXCESSIVE FORCE CLAIM

The unnecessary and wanton infliction of pain during incarceration constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see Whitley*, 475 U.S. at 320-21.

The Court twice previously denied Defendants summary judgment on Plaintiff's excessive force claim based on disputed issues of material fact. (Doc. Nos. 94 & 173) The testimony and other evidence presented by the parties during trial continue to demonstrate that the parties' versions of what happened on March 25, 2001 differ greatly. Defendants base their motion for judgment as a matter of law on three arguments: evidence at trial indicating that 1) Plaintiff sustained injuries on his forearms contradicts Plaintiff's testimony and evidence that the handcuffs placed on him were too tight; 2) while Plaintiff was in the holding cell, Plaintiff's feet did not leave the ground contradicts Plaintiff's testimony that he was thrown to the ground by correctional officer Defendants Rogelio Delgado and Paul Olivarria; and 3) Plaintiff's injuries were minor contradicts Plaintiff's claim that Defendants attacked Plaintiff. Defendants essentially advocate for their version of what happened on March 25, 2001. Defendants' arguments themselves further demonstrate that these issues are disputed factual issues. It is up to the jury to resolve these factual issues and a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff on his excessive force claim. The Court therefore denies Defendants' motion for judgment as a matter of law on Plaintiff's

excessive force claim.

## II. RELIGIOUS DIET CLAIMS

Plaintiff's religious diet claim is based on the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Equal Protection Clause of the Fourteenth Amendment.

### A.     First Amendment Free Exercise of Religion

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). Prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by preventing him from engaging in activities he sincerely believes are mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Shakur*, 514 F.3d at 884-85. In *Shakur*, the Ninth Circuit established that, as a threshold matter, a prisoner is not required to show objectively that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. Rather, the test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. *Id.* (finding district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether the plaintiff sincerely believed eating kosher meat is consistent with his faith). The mandates of a religion are not merely what is minimally required of adherents of a religion but include what "the individual human being perceives to be the requirement of the transhuman Spirit to whom he or she gives allegiance." *Peterson v. Minidoka County School Dist.*, 118 F.3d 1351, 1357 (9th Cir. 1997).[1]

A restriction on an inmate's First Amendment religious rights is valid if it is reasonably

---

[1] *See, e.g.*, *Shakur*, 514 F.3d at 885 (given the plaintiff's sincere belief that he is personally required to consume kosher meat to maintain his spirituality, the prison's refusal to provide a kosher meat diet implicates the Free Exercise Clause); *McElyea*, 833 F.2d at 198 (prison authorities may deny special religious diet if inmate is not sincere in his religious beliefs).

3

related to legitimate penological interests. *See O'Lone*, 482 U.S. at 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The burden is on the prison officials to prove that the restriction of the prisoner's exercise of religion was reasonably related to a legitimate penological objective. *See Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997). A prisoner's right to free exercise of his religion "'may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.'" *See Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (quoting *O'Lone*, 482 U.S. at 348).

Under the *Turner* analysis, a court must consider four factors when determining if a restriction that infringes on a prisoner's rights is reasonably related to legitimate penological interests: (1) the restriction must have a logical connection to legitimate governmental interests; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 89-90 (internal quotation marks and citations omitted). A prisoner, such as Plaintiff, who adheres to a minority religion must be afforded a "reasonable opportunity" to exercise his religious freedom. *See Cruz v. Beto*, 405 U.S. 319, 322 & n.2 (1972). This does not mean, however, that every religious sect or group within a prison must have identical facilities or personnel. *See id.*

**B.    Religious Land Use and Institutionalized Persons Act**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The statute applies to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).

Congress intended to distinguish RLUIPA from traditional First Amendment jurisprudence

4

in at least two ways. First, it expanded the reach of the protection to include "any 'religious exercise,' including 'any exercise of religion, whether or not compelled by or central to, a system of religious belief.'" *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) and 42 U.S.C. §2000cc-5(7)(A)). RLUIPA "bars any inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Id.* (quoting *Cutter*, 544 U.S. at 725 n.13). Second, as opposed to the deferential rational basis standard of *Turner*, 482 U.S. at 89-90, "RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.'" *Greene*, 513 F.3d at 986 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).

**C.     Fourteenth Amendment Equal Protection**

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz*, 405 U.S. at 322 (Buddhist prisoners must be given opportunity to pursue faith comparable to the opportunity given to Christian prisoners), as long as the inmate's religious needs are balanced against the legitimate penological goals of the prison. *See Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987); *see, e.g., Shakur*, 514 F.3d at 891-92 (finding district court erroneously applied rational basis review to the plaintiff's claim that the defendants violated the Equal Protection clause by providing only Jewish inmates with a kosher meat diet and remanding claim so that record could be more fully developed regarding the defendants' asserted penological interests).

**D.     Analysis**

Plaintiff alleges that Defendants denied him the Kosher diet, which conforms to the tenets of Plaintiff's sincere religious beliefs, in violation of the First Amendment, RLUIPA, and Equal Protection under the Fourteenth Amendment. Defendants argue that they are entitled to judgment as a matter of law because Plaintiff has not proven that the vegetarian meal plan offered by the

5

California Department of Corrections and Rehabilitation ("CDCR") is not kosher and therefore does not meet HOYY's religious requirements.

Defendants' argument fails for two reasons, which have been previously addressed in the Court's summary judgment orders. First, Defendants focus on the wrong inquiry. Under the Plaintiff's First Amendment claim, the appropriate inquiry is whether Plaintiff sincerely believes that his religion requires dietary restrictions, which Plaintiff believes are satisfied by CDCR's kosher meal plan, and whether CDCR's denial of the kosher meal plan to Plaintiff is reasonably related to legitimate penological interests. The appropriate RLUIPA inquiry, which provides more protection than the First Amendment and imposes heavier burdens on the government, is whether CDCR's denial of the kosher meal plan to Plaintiff places a substantial burden on Plaintiff's exercise of his religion, the denial furthers a compelling governmental interest, and whether the denial is the least restrictive means of furthering that compelling governmental interest. The appropriate Equal Protection inquiry is whether the difference between CDCR's treatment of the religious dietary requests of Plaintiff and those of Kosher-observant Jewish inmates is reasonably related to legitimate penological interests. Therefore, Plaintiff is not required to prove that CDCR's vegetarian meal plan is kosher.

Second, Defendants' argument fails because a factual dispute remains as to whether CDCR's vegetarian meals actually are kosher. Plaintiff testified that he does not believe the vegetarian meals are kosher and Defendants continue to assert that the vegetarian meals are kosher.

Plaintiff has presented testimony and other evidence regarding his sincerely held beliefs, the burden on his exercise of his religion resulting from CDCR's denial of the kosher meal plan to Plaintiff, and that he is similarly situated to Kosher-observant Jewish inmates but treated differently because of his religion. Therefore, a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff on his religious diet claims. The Court denies Defendants' motion for judgment as a matter of law on Plaintiff's religious diet claims.

/ / /

/ / /

6

**CONCLUSION**

For the above reasons, the Court **DENIES** Defendants' motion for judgment as a matter of law as to Plaintiff's excessive force and religious diet claims.

**IT IS SO ORDERED.**

Dated: May 13, 2010

NANDOR J. VADAS
United States Magistrate Judge