United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ANTHONY L. ROBINSON,

    Plaintiff,

v.

ROGELIO DELGADO, et al.,

    Defendants.

No. CV 02-1538 NJV

**ORDER DENYING POST-TRIAL MOTIONS AND ENTERING PERMANENT INJUNCTION**

This order is intended to fully and finally resolve all of the issues raised in the following post-trial submissions of the parties: Plaintiff's request for injunctive relief (Docket No. 271); Plaintiff's motion for judgment notwithstanding the verdict (Docket No. 272); Plaintiff's motion for permanent injunction (Docket No. 275); Defendants' response to the Court's request for proposed form of injunctive relief (Docket No. 276); Plaintiff's notice of withdrawal of docket numbers 271 and 272 (Docket No. 278); Plaintiff's response to issues raised at June 10, 2010 hearing (Docket Nos. 279 and 280); Defendant's motion for relief from judgment and for new trial (Docket No. 281); Plaintiff's motion for judgment as a matter of law and/or for new trial (Docket Nos. 287-289); Defendant's opposition to Plaintiff's notice of withdrawal and response to issues raised at June 10, 2010 hearing (Docket Nos. 293 and 294); Defendant's opposition to Plaintiff's motion for judgment as a matter of law and/or for new trial (Docket No. 295); Plaintiff's opposition to Defendant's motion

for relief from judgment and for new trial (Docket Nos. 298 and 299); Plaintiff's July 15, 2010 letter to clerk (Docket No. 300); and Plaintiff's motion to appear via video conference (Docket No. 312). For the reasons stated herein, the Court (1) will not consider Plaintiff's *pro se* motion for judgment notwithstanding the verdict; (2) denies Plaintiff's *pro se* request for injunctive relief and his request for entry of order for permanent injunction; (3) denies Defendant's motion for relief from judgment and for new trial; (4) denies Plaintiff's motion for judgment as a matter of law and/or for a new trial; and (5) orders the permanent injunctive relief set forth in section III, below.

## I. BACKGROUND

On May 14, 2010, a jury returned a verdict in favor of Plaintiff on his religious diet claims and in favor of Defendants on Plaintiff's excessive force and chapel access claims. (Docket No. 266.) After judgment was entered on May 19, 2010 (Docket No. 268), the Court directed the parties to confer in an attempt to reach an agreement regarding the form of injunctive relief necessary to implement the jury's verdict as to Plaintiff's religious diet claims. Since then, the parties have filed nineteen documents, letters and motions seeking various forms of injunctive and post-trial relief. More than half of those filings consist of or pertain to documents that Plaintiff filed *pro se* without consulting his counsel. The remainder of the parties' post-trial filings either address the form of injunctive relief that the Court should enter as to Plaintiff's religious diet claims or seek relief from the jury's verdict and/or a new trial.

## II. DISCUSSION

Before the Court are the parties' post-trial disputes as to (1) whether and to what extent the Court should consider two *pro se* filings by Plaintiff; (2) whether any party is entitled to relief from the May 19, 2010 judgment and/or a new trial; and (3) the nature and scope of the injunctive relief necessary to implement the jury's verdict in favor of Plaintiff on his religious diet claims.

**A.    Withdrawal of Plaintiff's *Pro Se* Post-Trial Filings**

On May 25, 2010, Plaintiff acting *pro se* and without consulting or notifying his counsel filed (1) a proposal for injunctive relief as to his religious diet claims and (2) a motion for judgment notwithstanding the verdict as to his chapel access claims (collectively referred to herein as "Plaintiff's *pro se* filings"). (Docket Nos. 271 and 272). On May 27, 2010, Plaintiff informed his

2

1  counsel of these *pro se* filings and indicated that he had prepared them "in haste and sent them to the
2  court based on a mistaken belief that counsel would no longer represent him following the
3  conclusion of trial." Pl.'s Resp. to Issues Raised at June 10, 2010 Hr'g at 2. Plaintiff authorized and
4  instructed his counsel to withdraw his *pro se* filings before they could be filed, which counsel
5  unsuccessfully attempted to do on May 28, 2010.[1] *Id.* That same day, Defendants objected to the
6  withdrawal of Plaintiff's *pro se* filings. On June 4, 2010, Plaintiff's counsel indicated to counsel for
7  the defense that Plaintiff would no longer seek to withdraw his *pro se* filings. Defs.' Opp'n to Pl.'s
8  Withdrawal of Docket Nos. 271 and 272, at 3; Brinkman Decl., at ¶ 6.
9      On June 10, 2010, the Court held a hearing and raised a number of issues including, *inter
10 alia*, whether and how the Court should consider Plaintiff's *pro se* filings in ruling on the parties'
11 post-trial motions. On June 15, 2010, Plaintiff's counsel filed (1) a brief addressing the issues raised
12 by the Court at the June 10, 2010 hearing; and (2) notice of withdrawal of Plaintiff's *pro se* filings
13 pursuant to Civil Local Rule 7-7(e). (Docket No. 278 and 279). In the brief, Plaintiff's counsel
14 argues that Plaintiff's *pro se* filings should not be considered by the Court and should be given little
15 or no weight in addressing Defendants' Rule 60 motion. On July 14, 2010, Defendants filed an
16 opposition to Plaintiff's notice of withdrawal. (Docket Nos. 293 and 294). On July 23, 2010,
17 Plaintiff sent a *pro se* letter (Docket No. 300) to the clerk asking that the Court disregard the notice
18 of withdrawal and treat his *pro se* filings "as a supplement" to the post-trial motions (Docket Nos.
19 275 and 287) filed by his counsel. On August 10, 2010 in the context of his *pro se* motion to appear
20 via video conference at the hearing on the parties' post-trial motions (Docket No. 312), Plaintiff
21 asked the Court to withdraw his motion for judgment notwithstanding the verdict (Docket No. 272)
22 and treat his proposal for injunctive relief (Docket No. 271) as a supplement to the motion for
23 permanent injunction (Docket No. 275) that his counsel filed on June 7, 2010. Finally, Defendants
24 cite to Plaintiff's *pro se* filings in their motion for relief from judgment and for new trial as evidence
25 that Plaintiff provided false testimony and perpetrated a fraud upon the Court. (Docket No. 281.)
26 ///
27
28      [1]Although Plaintiff's *pro se* filings did not appear on the electronic docket until May 28, 2010, they were filed with the Court on May 25, 2010.

3

### 1.     **Plaintiff's *Pro Se* Request for Injunctive Relief**

After Plaintiff's counsel filing their notice of withdrawal of, *inter alia*, Plaintiff's request for injunctive relief, Plaintiff (acting *pro se*) asked the Court to disregard the notice and treat his request for injunctive relief as a supplement to that which his counsel submitted on his behalf. (Docket Nos. 300 and 312.) Accordingly, the Court will consider Plaintiff's *pro se* request for injunctive relief in connection with his counsel's motion for permanent injunction (Docket No. 275).

### 2.     **Plaintiff's *Pro Se* Motion for Judgment Notwithstanding the Verdict**

Civil Local Rule 7-7(e) states that a moving party may file and serve a notice of withdrawal of a motion "within 7 days after service of an opposition." Civil L.R. 7-7(e). Defendants oppose the withdrawal of Plaintiff's *pro se* filings and argue, without citation to authority, that "[t]he safeharbor provision of Rule 7-7(e) is only triggered after an opposition to a motion is filed." Def's. Opp'n to Pl.'s Withdrawal of Docket Nos. 271 and 272, at 5. Contrary to Defendants' position, the Court interprets the deadline imposed by Rule 7-7(e) as a statement of the final, not the first, date on which a notice of withdrawal may be filed. Indeed, should a movant wish to withdraw a motion prior to the preparation and filing of an opposition, it would make little sense to require (1) that such withdrawal wait for an opposition to be filed and/or (2) the opposing party to expend the time and resources necessary to prepare an opposition to a motion that the movant intends to abandon.

Defendants never filed a response to Plaintiff's *pro se* motion for request of judgment notwithstanding the verdict. Defendants assert that they did not respond to Plaintiff's motion because Plaintiff did not properly notice it and therefore the time to respond has not run. *Id.* Plaintiff's failure to notice his motion in compliance with Civil Local Rule 7-2 provides an independent basis for the Court to strike the motion from the record. *See* Civil L.R. 1-4 (authorizing sanctions for failure to comply with local rules). Finally, the Court understands that Defendants' objection to the withdrawal of Plaintiff's *pro se* filings is grounded in Defendants' desire to use the contents of those filings in support of their motion for relief from judgment and for new trial. (Docket No. 281). However, the Court notes that Defendants cite only to Plaintiff's request for injunctive relief (Docket No. 271) in their substantive post-trial pleadings.

///

4

In light of the foregoing, the Court will not consider Plaintiff's *pro se* motion for judgment notwithstanding the verdict (Docket No. 272), both because Plaintiff has withdrawn it and because Plaintiff failed to comply with the Local Rules with regard to properly noticing his motion for hearing.

**B.     Motions for Relief from Judgment and/or for a New Trial**

On June 15, 2010, Plaintiff filed a motion for (1) judgment as a matter of law, or in the alternative for a new trial, as to Plaintiff's chapel access claims; and (2) a new trial as to Plaintiff's excessive force claims. (Docket Nos. 287-289). Generally, Plaintiff's motion claims that there was insufficient evidence presented at trial to support the jury's verdict as to Plaintiff's chapel access and excessive force claims. *Id.* Also on June 15, 2010, Defendant Cate filed a motion for relief from judgment and for a new trial. (Docket No. 281). Defendant's motion seeks relief based solely upon Plaintiff's *pro se* for injunctive relief. Specifically, Defendant argues that Plaintiff provided false and misleading testimony at trial regarding his desire to participate in the JKMP, such that Plaintiff prevented Defendant from fully and fairly litigating the case and perpetrated a fraud on the Court. *Id.* On July 14, 2010, Plaintiff filed an opposition to Defendants' motion (Docket Nos. 298-99), and Defendants filed an opposition to Plaintiff's motion (Docket No. 295). No replies were permitted.

**1.     Plaintiff's Motion for Judgment as a Matter of Law and/or for New Trial**

The jury returned a verdict in favor of Defendants on Plaintiff's excessive force and chapel access claims, and judgment was entered in accordance with that verdict. Plaintiff seeks (1) judgment as a matter of law on his chapel access claims, pursuant to Federal Rule of Civil Procedure 50(b); and/or (2) a new trial on his chapel access and/or excessive force claims pursuant to Federal Rule of Civil Procedure 59. In support of these requests, Plaintiff asserts that, even when construing the evidence presented at trial in a light most favorable to Defendants, the jury could only have reasonably found in favor of Plaintiff on his excessive force and chapel access claims. Plaintiff also asserts that the jury's verdict on these claims contravenes the clear weight of the evidence presented at trial.

A court may grant judgment as a matter of law under Federal Rule of Civil Procedure 50 only "if the evidence, construed in the light most favorable to the non-moving party, permits only

one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Id.* "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (noting that credibility determinations, weighing of the evidence and drawing legitimate inferences from the facts are functions of the jury, not those of the judge) (internal citations omitted). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* The Ninth Circuit has observed that the "high hurdle" that a party seeking judgment as a matter of law must overcome is intended to prevent the court from invading the province of the jury. *Costa v. Desert Palace*, 299 F.3d 838, 859 (9th Cir. 2002) (noting the "very high" standard that applies to Rule 50(b) motions); *see also* 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (3d ed. 2008) ("Since granting judgment as a matter of law deprives the party opposing the motion of a determination of the facts by a jury, it is understandable it is to be granted cautiously and sparingly by the trial judge, and the judicial decisions reflect that proposition.").

Federal Rule of Civil Procedure 59 permits a court to order a new trial "after a jury trial for any reason for which a new trial has heretofore been granted in such an action at law in federal court...." Fed. R. Civ. P. 59(a)(1). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035 (9th Cir. 2003). Courts "are thus bound by those grounds that have been historically recognized." *Id.* The Ninth Circuit has held that "'[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passatino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n. 15 (9th Cir. 2000)). "The existence of

6

1  substantial evidence does not ... prevent the court from granting a motion for a new trial pursuant to
2  Fed. R. Civ. P. 59 if the verdict is against the clear weight of the evidence." *Landes Construction*
3  *Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  In addressing a motion for
4  a new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not
5  view the evidence from the perspective most favorable to the prevailing party." *Id.*  (internal
6  citations and quotation marks omitted)

       **a.**       **Chapel Access Claims**

8        Plaintiff seeks either judgment as a matter of law or a new trial as to his chapel access claims
9  under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and
10  Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, et seq. ("RLUIPA").  As to his First Amendment
11  chapel access claim, Plaintiff takes issue with the jury's determination that the CDCR's refusal to
12  provide Plaintiff with chapel access or other accommodation for group worship on the Sabbath and
13  feast days is reasonably related to one or more legitimate peneological interests.  As to his
14  Fourteenth Amendment chapel access claim, Plaintiff takes issue with the jury's determination that
15  the CDCR's refusal to provide Plaintiff with chapel access or other accommodation for group
16  worship on the Sabbath and feast days does not constitute intentional  discrimination on the basis of
17  his religion.  As to his RLUIPA chapel access claim, Plaintiff takes issue with the jury's
18  determination that the CDCR's refusal to provide Plaintiff with chapel access or other
19  accommodation for group worship on the Sabbath and feast days is the least restrictive means of
20  furthering a compelling government interest.

21        Plaintiff's motion for judgment as a matter of law or for a new trial as to his chapel access
22  claims is fatally premised upon a fundamental misunderstanding of the parties' stipulated answer to
23  the jury's first question to the Court.  That question reads as follows: "[w]as there any evidence
24  presented as to whether plaintiff has been denied access for group worship *in Sacramento*.  If so has
25  there been any evidence that the denial is reasonably related to one or more peneological interests."
26  Trial Tr. vol. 5, 1166:18-23 (emphasis added).  The Court's response to this question was "Mr.
27  Robinson testified that he has been denied access for group worship *at Sacramento*.  There has been
28

7

no evidence that the denial was or was not reasonably related to one or more peneological interests." *Id.* at 1167:1-4 (emphasis added).

Plaintiff's chapel access claims, as stated in the operative fourth amended complaint that was filed on the first day of trial, allege only that he has been denied chapel access at Salinas Valley State Prison in Soledad, California ("SVSP"). Fourth Am. Compl., Docket No. 255, ¶¶ 24-29, 37-39, 42-44, and 49-52 at 5-9. Clearly, the jury's question and the Court's response were limited to the denial of chapel access at California State Prison - Sacramento ("CSP - Sac"), and does not, as Plaintiff suggests, constitute an instruction that Defendant Cate had failed to offer "any evidence at all" with respect to the peneological interests that might justify CDCR's denial of Plaintiff's request for chapel access. In that regard, the Court's response to the jury's question regarding chapel access at CSP - Sac does nothing to invalidate the propriety of the jury's verdict as to chapel access at SVSP. Further, Defendant elicited ample testimony from witnesses Belinda Hedrick, Barry Smith, and Arnold Ortega about both the legitimate and compelling peneological reasons for not being able to provide each inmate religious group with its preferred location, day, time and means of worship, as well as the efforts that were made to reasonably accommodate Plaintiff's requests for chapel access. That testimony was sufficient to sustain the jury's verdict for Defendant as to Plaintiff's chapel access claims.

In sum, there is substantial evidence to support the jury's verdict on Plaintiff's chapel access claims, and that verdict is not contrary to the clear weight of the evidence. Plaintiff is therefore not entitled to judgment as a matter of law under Fed. R. Civ. P. 50(b) or a new trial under Fed. R. Civ. P. 59.

    **b.**    **Excessive Force Claims**

On May 14, 2010, the jury returned a verdict in favor of Defendants Delgado and Olivarria on Plaintiff's excessive force claims, finding that neither defendant used excessive force against Plaintiff when they took him to the ground on March 25, 2001. Pursuant to Fed. R. Civ. P. 59(a), Plaintiff seeks a new trial on his excessive force claims, arguing that the jury's verdict was contrary to the clear weight of the evidence. Specifically, Plaintiff claims that the evidence presented at trial conclusively established that (1) he was inside of a holding cell when he was taken to the ground by

8

Defendants Delgado and Olivarria; and (2) it was not necessary to use force to subdue him once he was inside of the holding cell.  Specifically, Plaintiff asserts that the parties' stipulation that "Olivarria and Delgado forced Robinson to the ground on his stomach in the holding cell," coupled with the testimony of Defendants and their expert that no force is necessary once Plaintiff is inside of a holding cell, conclusively establishes that the force used by Defendants was excessive.  While there was consistent trial testimony by Defendants and their expert that it is not necessary to use force to subdue an inmate who is already in a holding cell, there was contradictory testimony from Plaintiff, Defendants, and a percipient witness as to whether Plaintiff was inside the holding cell at the time that he was physically subdued by Defendants Delgado and Olivarria.

Plaintiff testified that he was forced to the ground by Defendants Delgado and Olivarria after they had already shoved him into the holding cell.  Trial Tr. vol. 2, 275:15-284:12.  Defendant Delgado testified that (1) Plaintiff refused to enter the holding cell by pulling away from him and Defendant Olivarria; (2) Plaintiff was in the doorway to the holding cell after pulling away from Defendants; and (3) after being pulled to the ground by Defendants, the majority of Plaintiff's body was outside of the holding cell while parts of his legs (from his calves down) were in the holding cell.  Trial Tr. vol. 3, 521:18-22; 533:10-11, 17-20; 554:11-15; 555:17-19; 556:22-557:5; 558:11-559:5; 563:13-14; 568:14-21.  Defendant Olivarria testified that (1) as he and Defendant Delgado were about to place Plaintiff in the holding cell, Plaintiff pulled away from them; (2) at the time that Plaintiff pulled away from Defendants, he was in the doorway to the holding cell - not inside of the cell and not outside of the cell; and (3) he does not recall whether they were inside or outside of the holding cell after Defendants pulled Plaintiff to the ground.  Trial Tr. vol. 3, 602:16-18; 604:16-21; 631:2-14; 633:16-635:8.  Officer Strader, who was the only non-party percipient witness to Plaintiff being taken down by Defendants Delgado and Olivarria, testified that Plaintiff and Defendants were "almost in the door" of the holding cell at that time.  Trial Tr. vol. 3, 646:9-16.  Finally, the parties stipulated that "Olivarria and Delgado forced Robinson to the ground on his stomach in the holding cell," which was included in the final jury instructions.  (Docket No. 264.)

Based upon its observations at trial, the Court understands the foregoing testimony and stipulation to indicate that Plaintiff (1) refused to enter the holding cell; (2) physically resisted and

9

1 escaped from Defendants' control prior to entering to the holding cell; (3) such that Defendants
2 thought it necessary to force Plaintiff to the ground while he was either in the doorway to or just
3 outside of the holding cell; and (4) once Plaintiff was brought to the ground he was at least partly
4 inside of the holding cell. That is, the stipulation upon which Plaintiff bases his argument for a new
5 trial, particularly in light of the nature of the situation and the contradictory evidence detailed above,
6 is ambiguous as to where Plaintiff was at the time Defendants used force to subdue him. Had the
7 parties stipulated that Plaintiff was inside of the holding cell at the time that he was forced to the
8 ground by Defendants, the Court might very well reach a different conclusion. Considering the
9 record as whole, the Court cannot find that the jury's verdict in favor of Defendants on Plaintiff's
10 excessive force claim was contrary to the clear weight of the evidence. Plaintiff's motion for a new
11 trial is therefore denied.

**2.     Defendants' Motion for Relief From Judgment and for New Trial**

13 The jury returned a verdict in favor of Plaintiff on his religious diet claims under both the
14 First and Fourteenth Amendments, and the RLUIPA, and judgment was entered in accordance with
15 that verdict on May 19, 2010. Based solely upon Plaintiff's May 25, 2010 *pro se* request for
16 injunctive relief ("Request"), Defendant Cate seeks relief from that portion of the verdict/judgment
17 pursuant to Fed. R. Civ. P. 60(b)(2) (newly discovered evidence), 60(b)(3) (fraud, misrepresentation
18 or misconduct by an opposing party), and/or 60(d)(3) (fraud on the court), and asks the Court to alter
19 or amend the judgment, or to order a new trial, pursuant to Fed. R. Civ. P. 59. Defendant asserts that
20 scope and nature of the injunctive relief sought in Plaintiff's Request shows that Plaintiff offered
21 false testimony at trial, misled the Court and the jury, and prevented Defendant from fully and fairly
22 litigating the case.

**a.     Newly Discovered Evidence**

24 In order to qualify for relief under Fed. R. Civ. P. 60(b)(2), a party must present newly
25 discovered evidence that existed at the time of trial; could not have been discovered through due
26 diligence; and was of such magnitude that production of it earlier in the litigation would have likely
27 changed the outcome of the case. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).
28 Although Defendant's motion references Fed. R. Civ. P. 60(b)(2) for the proposition that a court may

10

relieve a party from a final judgment on grounds of "newly discovered evidence...[,]" Defendant makes no argument nor cites to authority showing that he can meet his burden under the facts and circumstances of this case to establish entitlement to such relief.  In any event, Defendant was well aware of Plaintiff's objections to the JKMP prior to trial, which formed the basis for his February 23, 2010 motion for summary judgment.  (Docket Nos. 231-234).  Those objections are not "newly discovered evidence" and therefore do not justify relief under Fed. R. Civ. P. 60(b)(2).

### b. Fraud, Misrepresentation or Misconduct

Fed. R. Civ. P. 60(b)(3) provides for relief from a judgment that is tainted by "fraud ... misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To prevail [under Rule 60(b)(3)], the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey v. Albertson's Inc.,* 362 F.3d 1254, 1260 (9th Cir. 2004) (quoting *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)). "Federal Rule of Civil Procedure 60(b)(3) require[s] that fraud ... not be discoverable by due diligence before or during the proceedings." *Id.* (quoting *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir.1991)).

At the August 19, 2010 hearing on the parties' post-trial motions, defense counsel argued that Plaintiff's *pro se* request for injunctive relief makes clear that the JKMP does not comply with Plaintiff's religious beliefs.  Plaintiff testified to that effect in his deposition and at trial, and his reiteration and expansion of that testimony in his Request does not constitute the type of fraud, misrepresentation or misconduct sufficient to justify relief under Rule 60(b)(3).  Again, Defendant was well aware of Plaintiff's objections to the JKMP both prior to and during trial.  Defendant (1) filed a motion for summary judgment based upon those objections, (2) presented testimony at trial as to the administrative and financial burden of providing religious meals to inmates; and (3) cross-examined Plaintiff at trial as to the differences between his religious dietary restrictions and those of kosher-observant Jews.

///

Further, the issue before the jury was not what diet satisfies Plaintiff's religion; it was whether the diet that CDCR was providing Plaintiff constituted an unconstitutional or otherwise illegal burden on Plaintiff's religion. Upon the jury finding that it did, the Court became responsible for fashioning prospective injunctive relief that comports with the jury's verdict, the mandates of the Constitution and applicable case law. Defendant has had ample opportunity, of which he has taken full advantage, to argue to the Court that ordering CDCR to provide Plaintiff with a diet that completely satisfies the requirements of his religious beliefs would be unduly burdensome and contrary to applicable law. Plaintiff also testified that he would be willing to accept the JKMP if the CDCR was unwilling or unable to provide him with a diet that satisfied the specific requirements of his religion, which Defendant has made clear CDCR does not want to do. In sum, Plaintiff's proposal for injunctive relief, while ill-advised in tone and outrageous in scope, simply does not bear upon the propriety of the jury's verdict or the judgment entered thereon. Relief under Fed. R. Civ. P. 60(b)(3) is therefore inappropriate.

### c. Fraud Upon the Court

Fed. R. Civ. P. 60(d) reiterates the Court's power to "set aside a judgment for fraud on the court." The Ninth Circuit Court of Appeals interprets "fraud on the court" narrowly, and has adopted the following definition of that term:

> "Fraud upon the court" ... emnbrace[s] only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (quoting *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999)). "Fraud on the court requires a grave miscarriage of justice, and a fraud that is aimed at the court." *Id. (internal quotation marks and citations omitted).*

Plaintiff's Request was submitted in response to the Court's instructions. That Request addresses only the nature and extent of the prospective injunctive relief to be fashioned by the Court in accordance with the jury's verdict. It merely states Plaintiff's preferences and desires, however far-fetched, as to the manner in which he would like the jury's verdict in his favor to be carried out.

12

1  The Request simply does not rise to the level of fraud on the court.  Further, Defendant has been
2  aware of Plaintiff's objections to the JKMP at least since his January 2010 deposition, and has had
3  ample opportunity both in his motion for summary judgment and in his post-trial briefing to respond
4  to those objections.  In that regard, there has been no "grave miscarriage of justice"  and relief under
5  Rule 60(d) is inappropriate.

### d.  Relief from Judgment or New Trial Under Rule 59

Aside from his arguments in support of his claims for relief under Rule 60, Defendant offers no additional reasons for the Court to grant his request for relief from the judgment or for a new trial pursuant to Federal Rule of Civil Procedure 59, which is also based upon Plaintiff's *pro se* request for injunctive relief.  Thus, for the same reasons that the Court declines to grant Defendant's motion under Rule 60 the Court denies Defendant's request for relief under Rule 59.

## C.  Injunctive Relief As To Plaintiff's Religious Diet Claims

On May 25, 2010, Plaintiff submitted a *pro se* proposal for injunctive relief that seeks broad and sweeping changes to the California Department of Corrections and Rehabilitation's ("CDCR") Jewish Kosher Meal Program ("JKMP"), which go well beyond what is reasonably necessary or legally appropriate in order to implement the jury's verdict. (Docket No. 271.)  Specifically, Plaintiff's proposal demands (1) that certain foods and drinks, and certain providers of foods and drinks be excluded from the JKMP; (2) that the JKMP include certain foods and drinks, and certain foods from specific providers; and (3) changes to the manner in which the JKMP meals are prepared and served.  Pl.'s Req. Injunctive Relief, at 1-4.  Plaintiff then goes on to demand that a separate, state-wide "kosher" diet program be created for his religion, and that he be appointed to oversee that program. *Id.* at 4.  Alternatively, Plaintiff seeks the appointment of a special master or Federal receiver to over see "his" kosher diet program. *Id.*  Plaintiff then asks the Court to "note" that he is the leader of his religion and its members within the CDCR, and that he should have the authority to decide who is permitted to participate in the diet program that he asks the Court to create for inmates who follow his religion. *Id.* at 5.  Plaintiff also requests certain foods and drinks for his religious feast days. *Id.* at 6.  Finally, Plaintiff demands chapel access on the Sabbath and certain feast days, which the jury determined he is not entitled to. *Id.*

13

///

In addition to Plaintiff's *pro se* proposal for injunctive relief, Plaintiff's counsel filed a request for entry of order for permanent injunction as to Plaintiff's religious diet claims. (Docket No. 275). That request asks the Court to enter a state-wide injunction amending the regulations that govern the JKMP to remove the condition that participants be kosher-observant Jews. On June 8, 2010, Defendants filed their response to the Court's request for a proposed form of injunctive relief as to Plaintiff's religious diet claims. (Docket No. 276.) That response claims that Defendants are entitled to a new trial on Plaintiff's religious diet claims in light of the statements made in Plaintiff's *pro se* filings; and cites to 18 U.S.C. § 3626(a)(1)(A) for the proposition that Plaintiff's request for a permanent injunction is overly broad such that violates the Prison Litigation Reform Act ("PLRA"). Plaintiff's June 15, 2010 brief responding to the issues raised by the Court at the aforementioned June 10, 2010 hearing asserts, *inter alia*, that the requested state-wide injunctive relief comports with both the PLRA and the opinion of the Ninth Circuit Court of Appeals in *Clement v. California Department of Corrections*, 364 F.3d 1148 (9th Cir. 2004). Finally, in the context of their motion for relief from judgment and for new trial (Docket No. 281), Defendants propose the following form of injunctive relief:

> Plaintiff Anthony Robinson (E-91884) is to be enrolled in CDCR's existing Jewish Kosher Diet as set forth in title 15, § 3054.2, et seq. Robinson will continue to participate in the Jewish Kosher Deit so long as he abides by the rules and regulations governing the diet, and so long as he is housed in a prison that offers the Diet. In the event that any dispute or disagreement arises in the future with respect to Robinson's participation in the Jewish Kosher Diet program, Robinson will be required to fully exhaust all available administrative remedies before seeking the Court's intervention.

Def.'s Not. Mot. Relief from Judgment and for New Trial, at 8-9.

The PLRA sets forth a number of limitations on the scope of prospective injunctive relief in civil litigation regarding prison conditions:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A); *see also Clement v. California Dept. of Corrections*, 364 F.3d 1148, 1152-53 (9th Cir. 2004) (citing *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001)).  "An injunction employs the least intrusive means necessary when it heels close to the identified violation and is not overly intrusive and unworkable and would not require for its enforcement the continuous supervision by the federal court over the conduct of state officers." *Clement*, 364 F.3d at 1153 (internal quotation marks and citations omitted).  Another indication of a sufficiently narrow injunction is that it "avoid[s] unnecessary disruption to the state agency's 'normal course of proceeding'" *Clement*, 364 F.3d at 1153 (quoting *Ashker v. California Dep't of Corrections*, 350 F.3d 917, 921-22, 924 (9th Cir. 2003)).

        The relief sought in Plaintiff's *pro se* request could not be more inconsistent with the need-narrowness-intrusiveness requirements for prospective injunctive set forth in the PLRA.  *See* 18 U.S.C. § 3626(a)(1)(A*).*  The sweeping changes to the JKMP, the creation of a separate meal program, and the feast day accommodations that Plaintiff requests are well beyond what is necessary to address the violations of Plaintiff's rights that were found by the jury.  Indeed, throughout trial Plaintiff testified, and his counsel argued both at trial and in motion practice, that he merely sought to participate in the JKMP, which would be sufficient to satisfy his sincerely held religious beliefs.  With regard to Plaintiff's request for the appointment of a special master or receiver, the Ninth Circuit's interpretation of the PLRA counsels against the "continuous supervision by the federal court over the conduct of state officers," which in any event is not necessary under the facts and circumstances of this case, as the Court will retain jurisdiction over this matter for the purpose of interpreting and enforcing the permanent injunction detailed below.  Finally, Plaintiff's request that he be appointed the leader of the followers of his religion within the CDCR, and his requests regarding chapel access are, respectively, beyond the scope of the Court's jurisdiction and contrary to the jury's verdict as to his chapel access claims.

        The scope of the relief sought in Plaintiff's counsel's request for entry of order for permanent injunction is also impermissible under the PLRA and applicable case law.  "'The scope of injunctive relief is dictated by the extent of the violation established.'  The key question ... is whether the inadequacy complained of is in fact 'widespread enough to justify system wide relief.'" *Armstrong*,

275 F.3d at 870 (quoting *Lewis v. Casey*, 518 U.S. 343, 359, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996))). In that regard, a systemwide injunction is appropriate only if Plaintiff has established systemwide injury and impact. *Armstrong*, 275 F.3d at 871. Isolated violations cannot support systemwide relief. *Id.* at 870; *see also Lewis*, 518 U.S. at 359.

Plaintiff's attempt to analogize the facts and circumstances of this case to those in *Clement* is not persuasive because the nature of the rights at issue (and therefore the scope of the appropriate remedy) in *Clement* is different from the rights at issue here. *Clement* dealt with the CDCR's prohibition against inmates receiving mail containing material that was downloaded from the internet. The court in *Clement* determined that the internet mail prohibition similarly subjected all inmates to the same unconstitutional condition, which only a statewide remedy would sufficiently address. In contrast, the rights at issue in the present case depend upon the sincerely held religious beliefs of the individual plaintiff; a subjective showing is required on behalf of each individual plaintiff in order to establish an actionable injury. The Eighth Circuit Court of Appeals has drawn this distinction in a salient manner with regard to the appropriate scope of injunctive relief in prison condition litigation. *See Smith v. Arkansas Dept. of Correction*, 103 F.3d 637, 645-647 (8th. Cir. 1996) (distinguishing between conditions of confinement that similarly subject a broad range of inmates to the same constitutional violation, and more subjective constitutional deprivations that require an individualized showing on the part of each plaintiff; finding that, because a plaintiff's injury could not be remedied on an individualized basis, a broader injunction was appropriate).

The trial in this case was limited to the rights and subjective beliefs of an individual plaintiff; neither the jury nor the Court was presented with evidence of, or made determinations regarding, the sincerely held religious beliefs or rights of anyone other than Mr. Robinson. Therefore, the jury verdict cannot form the basis for prospective injunctive relief on behalf of anyone but Plaintiff himself. *See, e.g., Lewis*, 518 U.S. at 358-360 (subjective findings as to individual plaintiffs insufficient to evince systemwide violation or to justify the imposition of systemwide relief). In the context of a case that hinges upon the subjective beliefs of an individual plaintiff whom the Court can simply exempt from the JKMP's requirement of being a kosher-observant Jew, the state-wide amendment of the regulations governing the JKMP is neither justified under applicable case law nor

16

satisfies the need-narrowness-intrusiveness requirements of the PLRA. Accordingly, Plaintiff's request for entry of order for permanent injunction is denied.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's *pro se* request for injunctive relief; DENIES Plaintiff's request for entry of order for permanent injunction; DENIES Defendants' motion for relief from judgment and for new trial; DENIES Plaintiff's motion for judgment as a matter of law and/or for a new trial; and ORDERS a permanent injunction as follows:

**A.   Findings of Fact and Conclusions of Law**

In accordance with the jury's verdict, the resulting judgment, and the foregoing principles of law, the Court makes the following findings of fact and conclusions of law in support of the permanent injunction set forth below:

(1) Plaintiff subscribes to the religious beliefs of the House of Yahweh Yahdaim ("HOYY").

(2) Plaintiff's sincerely held religious beliefs require him to follow certain dietary restrictions.

(3) The diet that CDCR currently provides Plaintiff does not satisfy the requirements of his sincerely held religious beliefs.

(4) CDCR's refusal to provide Plaintiff with a diet that satisfies his religious dietary restrictions constitutes substantial interference with Plaintiff's sincerely held religious beliefs.

(5) Plaintiff is similarly situated to kosher-observant Jewish inmates with regard to his request for a diet that satisfies the requirements of his sincerely held religious beliefs.

(6) CDCR is treating Plaintiff differently from kosher-observant Jewish inmates by refusing to provide him with a diet that satisfies the requirements of his sincerely held religious beliefs.

(7) CDCR is intentionally discriminating against Plaintiff because of his religion with regard to its refusal to provide him with a diet that satisfies the requirements of his sincerely held religious beliefs.

(8) CDCR's refusal to provide Plaintiff with a diet that satisfies the requirements of his sincerely held religious beliefs is not reasonably related to one or more legitimate peneological interests.

(9) CDCR's refusal to provide Plaintiff with a diet that satisfies the requirements of his sincerely held religious beliefs is not justified by a compelling government interest.

(10) Plaintiff's religious dietary restrictions are satisfied to the extent required by the First and Fourteenth Amendments to the United Sates Constitution and the RLUIPA by allowing Plaintiff to participate in the JKMP.

(11) Plaintiff requested to participate in the JKMP, and although he was temporarily enrolled in the program, he was subsequently removed from the program because he is not Jewish.

(12) Plaintiff is not currently participating in the JKMP.

(13) The prospective relief of allowing Plaintiff to participate in the JKMP on the same terms and conditions as kosher-observant Jewish inmates is narrowly drawn, extends no further than necessary to correct the violation of Plaintiff's rights under the First and Fourteenth Amendments and the RLUIPA, and is the least intrusive means necessary to correct the violation of those rights.

(14) Plaintiff is without an adequate remedy at law with regard to his religious diet claims.

(15) To the extent that allowing Plaintiff to participate in the JKMP despite the fact that he is not a kosher-observant Jew would "[require] or [permit] a government official to exceed his or her authority under State or local law or otherwise [violate] State or local law," the Court makes the following findings as required by 18 U.S.C. § 3626(a)(1)(B):

  (a) 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, RLUIPA, and applicable case law require the injunctive relief ordered herein;

(b) The relief ordered herein is necessary to correct the violation of Plaintiff's rights under 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and RLUIPA; and

(c) No other relief will correct the violation of these Federal right in compliance with Federal law.

**B.   Permanent Injunction**

(1) Pursuant to the equitable powers of this Court, Defendant Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, and his agents and all persons in active concert or participating with any of them who receive actual notice of this Order and Permanent Injunction, are hereby immediately and permanently ordered to permit Plaintiff to participate in the CDCR's Jewish Kosher Meal Program on the same terms and conditions as kosher-observant Jewish inmates and without regard to the fact that Plaintiff is not a kosher-observant Jew.

(2) In the event that any dispute or disagreement arises in the future with respect to Plaintiff's participation in the Jewish Kosher Meal Program, Plaintiff is required to fully exhaust all available administrative remedies before seeking the Court's intervention.

(3) This Court shall retain jurisdiction of this action for all purposes, including without limitation, all proceedings involving the interpretation, enforcement, or amendment of this Order and Permanent Injunction.

**IT IS SO ORDERED.**

Dated: August 31, 2010

NANDOR J. VADAS
United States Magistrate Judge